"During the time that you had the lease of this property, do you know whether the rent was paid?"

replied:

"Only by hearsay."

He further testified that plaintiff never called upon him about the rent, and that her mother called but once, and he (the doctor) told her that his brother had paid Ben, and that he had nothing to do with it.

Jonas Weil, one of the defendants, testified, at one time, as follows:

"Q. Did you ever pay any rent on said land? A. We have. We paid to Cassie Cutno, at Lutcher. Her mother and Cassie Cutno, together, came and got $8 once; and if I am not mistaken $5, afterwards. Also on a Monday, she got $15 in the presence of Ben Cutno."

Later in his examination, the following appears:

"I understand you to say that there was paid, at Lutcher, to Cassie Cutno and Mrs. Cutno, an amount for rent on that lease? A. It was paid to Cassie Cutno, and Mrs. Cutno was present. Q. Were you present at that time? A. No, sir."

Counsel for plaintiff then moved that the testimony be stricken out, and it was so ordered, a circumstance which appears to have escaped the attention of the learned trial judge. We find, in the brief filed on behalf of defendant, the following as the sole reference to the improvements, to wit:

"The judgment makes no reservation in favor of defendants for the improvements on the property, placed thereon by them in perfect good faith."

As neither plaintiff nor defendant in their pleadings pray for any decree with regard to the improvements, the omission complained of seems natural enough. Plaintiff's prayer, that the amount allowed for the occupancy of the premises be increased, is not sustained by the evidence.

For the reasons thus assigned, it is ordered, adjudged, and decreed that the judgment appealed from be amended by striking therefrom the credit of $23 allowed to the defendants, and, as thus amended, affirmed; defendants to pay all costs.

PROVOSTY, J., dissents.

(53 South. 964.)

No. 18,154.

BROUSSARD et al. v. GUIDRY et al.

(Jan. 3, 1911.)

*(Syllabus by the Court.)*

1. APPEAL AND ERROR (§ 1175*)—REVIEW—EVIDENCE.

In a case where the appellants ask that the case be not remanded to take a new survey of land in controversy, and the appellee does not urge the necessity of a remand, the court will consider the evidence and the survey already made, though it is admittedly not altogether satisfactory, and give judgment, instead of remanding the case to have a new survey made, when there is no assurance that a better survey will be obtained.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4573–4587; Dec. Dig. § 1175.*]

2. EVIDENCE (§ 372*)—DOCUMENTARY EVIDENCE—ANCIENT DOCUMENT.

A document found in the possession of a defendant, and which purports to be an act translative of property signed 25 years previous to its production, and never recorded, cannot be introduced by the defendant under the rule relating to ancient documents, without evidence

showing that it was signed on the date that appears on it.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1613–1627; Dec. Dig. § 372.*]

3. EVIDENCE (§ 353*) — DOCUMENTARY EVIDENCE—ACTS OF SALE.

A purported act of sale not signed by one of the parties to the act does not evidence the consent of the parties, and as it cannot pass title it is inadmissible as evidence of a title in a suit between the descendants of the parties.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 1418; Dec. Dig. § 353.*]

Appeal from Seventeenth Judicial District Court, Parish of Vermillion; Wm. Pierrepont Edwards, Judge.

Action by Eloi Broussard and another against Scholastic Guidry and others. Judgment for defendants, and plaintiffs appeal. Affirmed.

See, also, 114 La. 913, 38 South. 616.

Kitchell & Bailey and John Nugier, Jr., for appellants. Gordy & Gordy, for appellees.

BREAUX, C. J. The purpose of this suit is to have the boundary line between plaintiffs' estate and defendant's settled and determined.

There is no question of title.

Originally, these estates formed part of a large tract which has since been subdivided. It now belongs to different owners.

The contention on the part of plaintiffs is that the lines between the two estates have never been determined and fixed, or, if ever fixed, that the lines have become obliterated.

Plaintiffs claim that they and their authors had been in possession of the land, the boundary of which they seek to have fixed, since many years.

In accordance with the application of plaintiffs, a surveyor was appointed to survey the land.

In an exception, which was the first appearance made by the defendant, she averred that plaintiffs had no cause of action, or, if they ever had such a cause, it was barred by the prescription of 10 and 30 years, during which time, she had, as she averred, open and uninterrupted possession.

She also averred that the boundary lines between the two estates were well defined and had long since been established.

The exception was referred to the merits, and the defendant thereafter filed a general defense.

The surveyor was appointed in accordance with the order of court, and, in his return, stated that, after consulting all the data at hand and after running different lines, he had arrived at the conclusion that the post known as the "Bradford Post" was a correct point of departure; that this post is at or near the corner of townships 10 and 11, ranges 3 and 4 E.

That he had found another surveyor's mark at the northeast corner of the François Broussard concession; that, by following distances and the bearings of old surveys, and closely consulting and following a map in evidence in suit 1779, he had found that part of the tract known as the Eugene Broussard tract was within the inclosure of the defendant, and that this tract measured $1198^{0}/_{100}$ acres.

On his own motion, he was allowed to withdraw this return made of his survey.

This survey is one of the incidents of the suit to which we will have no occasion to return.

Some time after, the surveyor made another survey, of which he made a map, which was introduced in evidence, and he was examined as a witness at some length on the application made by plaintiffs to homologate and approve this second survey.

The defendant objected to the homologation and approval, and filed grounds upon which the objection was urged.

These grounds in substance were:

That the field notes were not produced and that the lines were not located.

Defendant also objected on the ground

that the surveyor had not given the quantity of land in each tract.

On his direct examination, in support of his survey, he succeeded in explaining clearly enough the methods followed in making the survey, which had every appearance of being correct.

The surveyor had made three surveys of the land; one in 1908, another in 1909, and a supplemental survey, supplementing that which needed to be supplemented in the last survey.

This offered inviting field for cross-examination.

This witness was placed somewhat at disadvantage under the cross-examination. He did not succeed in clearly explaining why he selected the point of departure as he did.

None the less, the survey was accepted by the district judge, who was not thoroughly convinced, as he stated in his written opinion, that he should accept it, as it did not seem to be conclusive on a certain point.

The judge further stated in his written reasons for judgment that it was not advisable to set aside this survey and order another for the reason that it was not probable that another survey would be more satisfactory in view of the uncertainty about the point of departure and because, as we infer, of the conflict in the testimony of the witnesses.

All of the lands involved are within the François Broussard concession, an ancient and well-known concession.

Two of the surveyors adopted the maps and field notes of the United States surveyors to some extent at least.

We are informed that near the point of departure there is a witness tree and other surveyors' monuments.

The surveyor appointed by the court testified that his line was correct according to the field notes.

He also studied carefully and followed closely map A in evidence handed to him at the time by counsel for defendant.

When the surveyor's map was offered, counsel for defendant objected on the ground that the survey did not agree with the partition which was re-established by this court in the case of Broussard v. Guidry, 114 La. 913, 38 South. 616.

He also testified that the point of departure was 28 chains and some links from a coulee known as the Coulee Isle aux Nois.

This is the distance according to this witness from the township line at that point to that coulee.

Campbell, the United States deputy surveyor, located the township line at that point at 12 chains and some links from the coulee, making a difference of 13 chains between the two.

This witness testified that from all the data he had gathered he felt confident that there was no material difference between his survey and the previous surveys made. He felt confident that it corresponded with the field notes; that the township line at that corner was the proper starting point.

Other testimony on the same subject reduces the difference in measurement between the township line to the coulee.

Of this later.

Judgment was rendered, establishing the boundary line between plaintiffs and defendant; overruling the plea of estoppel and the plea of prescription of 10 years, but maintaining the prescription of 30 years to that part of the property claimed by defendant lying north of the doube ditch, described in the testimony in the above cause, and between the rear concession line and the ditch or fence running north 13 degrees, 30 minutes, west, between lines in possession of plaintiffs and defendant, and disallowing the purported act of exchange.

There was an act of exchange between Eugene Broussard and Treaville Guidry.

Guidry transferred a small tract of land to Broussard and Broussard transferred his land in exchange. This was in 1870.

The agreement of exchange, to which we will have occasion to refer later, was very informally drawn.

Plaintiffs' contention is, as to this exchange, that defendant had no title and no possession upon which to base the plea of 10 years' prescription; and, as it is, defendant has not shown that 30 years had elapsed.

To these grounds, we will have to refer again later.

In this court, the appellee asks for an amendment of the judgment by recognizing the defendant as owner of the land acquired by her in exchange with Eugene Broussard under whom, by mesne conveyance, he owns.

The further contention as relates to this application to amend the judgment is that the agreement of exchange, annexed to and forming part of defendant's answer, should be recognized as an agreement translative of property and sufficient to support the 10 years' prescription, and, thereby, enable the defendant to recover all the lands transferred to her ancestor in title under the agreement of exchange.

The appellee further averred in substance that the court's recognition of the survey of Ernest Montagne is not correct, for the reason that he ran the line from the northwest corner of the François Broussard concession, a point over 28 chains north of the Coulee Isle aux Nois, while original surveys and others subsequent show that the point of departure before referred to is not over 14 chains north of the coulee.

The defendant acquired about one half of Eugebe Guidry's land in the François Broussard concession. The other half of the Eugebe Guidry tract was acquired by Cordelia Guidry. Both were daughters of Eugebe Guidry, a former owner.

There can be no question, as contended by plaintiffs, possession upon which prescription acquirendi causa is founded must be continuous and uninterrupted; it must be public and under the title of the owner. Civ. Code, art. 3500.

The defendant had such a possession (to the extent that our decree recognizes possession in defendant) to the land to which we have just referred.

The possession of defendant's author and her own date back over 30 years prior to the filing of the suit; that is, possession of the land of which she is recognized as being the owner.

She paid the taxes from the date of the exchange and exercised all the rights of ownership.

The extent of the possession gives rise to the issues.

In order to arrive at that extent, it was necessary to establish the boundary lines.

This suit was instituted and after issue joined, a surveyor was appointed by the court with consent of parties.

Surveyor Montagne was appointed.

With regard to the survey referred to as "the Montagne Survey," made under the order of the district court, that court, although it considered that the survey was not all it should be, said, in his written reasons for judgment, that "it may be that no better can be made."

None the less, the court approved the survey.

Appellants ask that the case be not remanded, and appellee does not argue that there is necessity of remanding the case.

It is reasonable to infer that there were established points of departure for making surveys in the old François Broussard concession.

The surveyor who made the last survey, before referred to, said that he sought to follow ancient lines, and that he had succeeded in finding them; that he began his

survey from the point in the field established by the United States surveyors; that he found a post referred to by Bradford in his field notes.

There was nearby a witness tree; that he measured the distance from the post to the Coulee Isle aux Nois.

From that point he ran back a stated distance to the intersection of the range line and on to the end of the survey.

He stated that he based his survey on map A, handed to him by counsel for defendant prior to the survey.

With the testimony of this witness, his plat was offered in evidence, to which the counsel for defendant objected on the ground, among others, that it did not agree with the map of the partition, re-establishing one of the lines by this court.

The objection was properly overruled and the map was admitted. There is not such a marked disagreement between this map and the other evidence.

This surveyor testified that he initiated his survey from the township corner at a post placed by the government surveyor, Geo. K. Bradford, and that there was another with which he identified at the northwest corner of section 40, township 10 S., range 3 East, a common township corner; that he found a piece of a plow designated on the field notes of Bradford and Campbell, United States surveyors under the post; and that he also found a witness tree at this corner; that certain distances measured convinced him that the post is correct.

The witness' measurement of distance to the Coulee Isle aux Nois has given rise to serious controversy.

He says that he measured 12 chains and 32 links to the township line and 16 chains and 35 links from the township line to the coulee, making 28 chains and 67 links, while the Campbell survey shows 12 chains and 32 links from the corner to the township line, and 2 chains and 75 links to the coulee instead of 16 chains and 35 links.

As relates to survey, the controversy is limited to the distance between the township line at the point in question and the coulee before mentioned.

The Campbell survey is an old survey, and, while there is some reference to it by Bradford, he does not give the figures of measurement between township and coulee.

The corners adopted were located by different surveyors; among them, Edwards, an old surveyor of experience, Fort, and others.

The field notes do not entirely agree; there are discrepancies. Old surveys are not always correct. By common consent the new points of departure have been adopted.

The original government surveys may not be at the place since adopted by other surveyors. There seems to be well-established landmarks adopted since. Some of them received some recognition in the decision cited supra.

We would not be justified in going back to the original survey to follow it. Were we to do so, it would change a number of lines. They would have to be located further south about 13 chains. This we will not do save on the best of proof.

The evidence is not before us to justify that change.

Our learned brother of the district court states in his written reasons that there are discrepancies in the original surveys in that part of the country which can never be satisfactorily reconciled. "My fear that another survey would only add another doubt and do little good causes me to adopt the one already made."

There is another significant fact: The defendant claims other land, although she has over her complement of land.

The surveyor returns that she has in her possession in excess of her allotment in a partition, especially referred to, $937^9/_{100}$

acres, while plaintiffs are short in the measurement of their land 84$^{37}/_{100}$ acres.

This, to say the least, is corroborative of the lines established.

Defendant and her authors having had possession, we maintain the prescription of 30 years.

This brings us to a consideration of the plea of 10 years' prescription, interposed by defendant.

She claims a portion of the land by virtue of and under a plat and asserted agreement of exchange, dated in 1870. This plat was not recorded; it was found in the possession of the defendant 25 years after its purported date. The procès verbal of the surveyor was used in order to have it appear that a sale was made. The indorsement on this plat was something in the nature of a sale. It was not regularly signed, if signed, at least as to one of the parties.

It was offered in evidence as an ancient document, admissible without proof.

It was admitted in the district court, in connection with the prescription of 30 years.

There is no law in this state fixing the period of time to establish an ancient document.

As relates to the purported date, it is not conclusive. Any one can write a date as of yesterday.

There is no evidence showing that the document existed from the day of the purported date.

The rule is that all documents evidencing the conveyance of realty be recorded.

In the absence of a recorded deed, in order that an instrument may be admitted in evidence, it must clearly appear that it is what it purports to be.

Moreover, the signature of one of the parties was not affixed to the indorsement on the surveyor's map.

It served the only purpose for which it could serve. It does not prove title, inasmuch as it is not evidence of the consent of the parties, one of whom it does not appear signed.

It was not admissible as a title, even among the descendants of those who signed.

In that light (that is, to prove title) it is a nullity.

With regard to the objection, noted above, to wit, that the map of the surveyor, Montagne, should not be admitted in evidence, because it differed from the sketch and from the conclusion of the court in the decided case of Broussard v. Guidry, 114 La. 913, 38 South. 616.

The evidence was properly admitted, for the Montagne survey agrees with the sketch.

In following the different lines of the sketch it will be seen that the court heretofore adopted the northern boundary of the land, as did Surveyor Montagne.

As to these strips of land exchanged as before mentioned, the one intended for Mrs. Guidry was not taken possession of at the date of the purported exchange.

She had no title, and has not acquired a prescriptive title under 10 years' prescription. Possession and title acquired in good faith are essential to sustain the plea of 10 years' prescription to acquire immovables by that prescription.

After issue joined in the district court Mrs. Guidry died, and her heirs were made parties. For brevity, we used the name of the original defendant.

For reasons assigned, the judgment is affirmed at appellants' costs.