LANDRY, Judge.
This action in boundary was instituted by plaintiff, Charles A. Branch, to judicially determine the bounds separating a certain municipal lot owned by said plaintiff in the Town of Ponchatoula, Louisiana, from the adjoining property lying to the south thereof belonging to and occupied by defendant, Vivian Hinson, as her residence. Defendant filed exceptions of prescription contending (1) plaintiff’s action was barred by prescription of 10 years under the provisions of LSA-C.C. 825 and the ruling in Sessum v. Hemperley, 233 La. 444, 96 So.2d 832, and (2) plaintiff is owner of the disputed property by virtue of thirty years acquisitive prescription as provided for in Articles 852 and 3499, LSA-C.C.
After trial on the merits the learned trial court rejected defendant’s plea of 10 years prescription in bar of plaintiff’s right to institute the action and fixed the boundary of the contiguous estates two feet north of defendant’s residence. From said determination defendant has appealed maintaining the trial court erred in overruling her plea of 10 years prescription and also contending our esteemed brother below mistakenly declined to sustain appellant’s plea of thirty years prescription and recognize defendant as owner of the disputed area extending to a fence and hedge line situated a few feet north of the center line of Lot 4, Square 37, which constitutes the dividing line between the litigants’ estates according to their respective titles.
In disposing of the issues thus posed certain well established principles of law must be borne in mind. An action in boundary will lie when one of the three following situations obtains: (1) Where a boundary line has never been established to separate contiguous estates; (2) where boundaries once established have become completely eradicated; and (3) where there has been an incorrect fixing of boundaries. See LSA-C.C. Arts. 823, 853.
Where boundary lines have never been established or the estates separated, pursuant to LSA-C.C. Art. 845 the boundaries must be fixed according to the respective titles of the adjoining owners, and in the absence of titles on both sides, possession governs. In instances where boundaries once fixed have become eradicated, such boundaries must be reestablished at their former locations. Zeringue v. Harang’s Administrator, 17 La. 349; Opdenwyer v. Brown, 155 La. 617, 99 So. 482; Sessum v. Hemperley, 233 La. 444, 96 So.2d 832.
With regard to the third category above enumerated, we note the following language of the Supreme Court contained in Sessum v. Hemperley, 233 La. 444, 96 So.2d 832, applicable to boundaries extrajudi-cially fixed or placed incorrectly by the consent or active acquiescence of the adjoining owners:
“In the third instance, where there exists actual visible bounds which have been extrajudicially placed incorrect *657 ly or fixed by the consent of or the active acquiescence of the adjacent land owners, an action in either case to rectify an alleged error in the location of the boundary line must be instituted within ten years under the penalty of being prescribed. LSA-C.C. Art. 853. The consent as to visible bounds made essential under said article to form the basis of ten year prescription must be more than a passive acceptance; it must be an affirmative recognition by both parties. Blanchard v. Monrose, 12 La.App. 503, 125 So. 891.
The mere erection of a fence or a hedge as a boundary, without the consent of the adjoining land owner, will not serve as the basis for ten year prescription, for this is said to be mere occupancy, and not adverse possession as required by LSA-C.C. Art. 853. Williams v. Bernstein [51 La.Ann. 115, 25 So. 411], supra. Further, when boundary lines are fixed judicially, the fixing thereof becomes a part of and is merged in the judgment which, saving attacks on the ground of fraud made within one year, becomes res judicata.”
We note in Sessum v. Hemperley, supra, a scholarly summation of the codal authority and jurisprudential rules applicable in boundary actions. Being unable to improve thereon, we cite the following with complete approbation:
“LSA-C.C. Art. 852 says: ‘Whether the titles, exhibited by the parties, whose lands are to be limited, consist of primitive concessions or other acts by which property may be transferred, if it be proved that the person whose title is of the latest date, or those under whom he holds, have enjoyed, in good or bad faith uninterrupted possession during thirty years, of any quantity of land beyond that mentioned in his title, he will be permitted to retain it, and his neighbor, though he have a more ancient title, will only have a right to the excess; for if one can not prescribe against his own title, he can prescribe beyond his title or for more than it calls for, provided it be by thirty years possession.’
Under the provisions of LSA-C.C. Art. 852 it is observed that one who has maintained uninterrupted possession of property within existing visible bounds during thirty years may retain the quantity so possessed by him though it be beyond and more than called for by his title. This is the possession that is essential to bring this article into operation, irrespective of the good or bad faith on the part of the possessor. There is nothing in the provisions of LSA-C.C. Art. 852 which demands the element of mutual consent of the parties. Its provisions clearly provide that possession of surplus land beyond one’s title shall entitle him to retain the same once his possession has continued uninterrupted within visible bounds for a period of thirty years. Beene v. Pardue, La.App.1955, 79 So.2d 356; Sattler v. Pellichino, La.App.1954, 71 So.2d 689; Adams v. Etheredge, La.App.1954, 70 So.2d 388; Duplantis v. Locascio, La.App.1953, 67 So.2d 125; Tate v. Cutrer, La.App.1951, 53 So.2d 285; Picou v. Curole, La.App.1950, 44 So.2d 354; Latiolais v. Robert, La.App.1942, 8 So.2d 347.
In the case of Broussard v. Guidry, 127 La. 708, 53 So. 964, 967, this Court maintained a boundary which had stood undisturbed for more than thirty years, although said boundary did not correspond with the original survey and the defendant had in her possession 90 acres more than her titles called for, while plaintiff lacked more than 80 acres than his titles called for. We said: ‘Defendant and her authors having had possession, we maintain the prescription of 30 years.’ ”
*658 The record in the instant case discloses that plaintiff’s record title includes, inter alia, the north one-half of Lot 4, Square 37, Ponchatoula, Louisiana, while defendant’s deed covers the south one-half of said Lot 4, together with a certain portion of Lot 3 lying to the south thereof, both of said properties fronting on the west side of Seventh Street and having a depth of 200 feet. Defendant’s property fronts 50 feet on Seventh Street; the extent of plaintiff’s frontage is not definitely shown in the record but such omission is of no material consequence insofar as concerns the outcome of the present action.
It conclusively appears from the record that appellant and her late husband moved onto the property in question in 1928 or 1929, after taking a lease with purchase option from the then owner whose name was Clement. Subsequently in November, 1929, appellant’s now deceased husband purchased the property which has since become the property of defendant in complete ownership. Since the initial lease in 1928 or 1929, defendant has been in personal occupation of the home situated thereon continuously and without interruption. When appellant and her family commenced occupancy of their property the adjoining residence was occupied by appellee’s family. Plaintiff was reared in the home next door to that of defendant. Plaintiff lived in his family home many years and purchased the interests of his brothers and sisters therein upon the death of his mother who resided in the home until her demise in 1952.
When defendant and her late husband began occupancy in 1928 or 1929, an iron ornamental fence set in concrete enclosed the front of appellant’s lot at Seventh Street. Although there is some dispute as to the distance it began from the street and the distance it ran toward the rear, it is conceded a picket fence separated the properties, said fence being located approximately 10 feet north of the north side of defendant’s residence. It further appears that at this time a wire fence commenced where the old picket fence stopped and from thence ran westerly to the rear of defendant’s property. Along this fence were situated some trees and a hedge line planted by plaintiff’s parents on the north side of the aforesaid fence.
The record reflects beyond question that when defendant and her husband took possession in 1928 or 1929, a large wooden shed or garage was situated near the rear of the lot within a few feet of what defendant considered the north line of the property. This shed or garage was used by defendant’s husband from initial occupancy to park trucks employed in his business. Access thereto was gained by means of a driveway which Hinson constructed by shelling the area between the north side of the residence and the fence previously mentioned. It is absolutely clear from the record that from the very beginning defendant and her husband considered their property as extending to the fence. They used the disputed area as a driveway; their children played in the strip in controversy and were joined in such activity by plaintiff and plaintiff’s brothers on many occasions during plaintiff’s childhood. That defendant and her husband claimed the property as owners and not by mere sufferance of plaintiff and plaintiff’s authors in title is also abundantly clear from the record. They continuously exercise acts of open, uninterrupted possession as owners and gave every possible overt indication they regarded the driveway as their own property. As so frequently happens, however, the picket fence ultimately deteriorated to the point it virtually disappeared. Thereafter plaintiff’s family planted a hedgerow along the line formerly occupied by the fence, some vestiges of which still remain. A portion of the wire fence which ran past defendant’s garage to the rear of the properties still remains. At some undisclosed time the old wooden garage located upon defendant’s lot was demolished and replaced by one of metal erected in the identical location occupied by the former structure. It encroaches some two or three feet upon the *659 south line of plaintiff’s lot as described in plaintiff’s title.
We believe it suffices to state the foregoing analysis of the testimony of record is a fair synopsis of the virtually uncontra-dicted evidence given by defendant’s witnesses among whom were included John Alva Branch, brother of plaintiff-appellee.
Esteemed .counsel for appellee contends defendant may not invoke the prescription of 30 years as the basis of appellant’s claim inasmuch as defendant learned in 1935 she was not the owner of the disputed strip and thereafter ceased to be a possessor in good faith as of that time which was less than 30 years prior to the time suit was instituted by plaintiff in September, 1962.
In this connection the record shows that in December, 1935, defendant and her husband caused their property to be surveyed by one C. M. Moore, Surveyor, in connection with defendant’s application for a loan. The survey in question, offered in evidence as Exhibit P-1 shows the north line of defendant’s lot as being situated two feet north of the north edge of defendant’s residence, at which point the boundary was fixed by the trial court as previously noted. Astute counsel for plaintiff argues that from the date of said survey defendants were aware their title did not include the property extending to the fence, therefore, they were not in good faith possession from said date and consequently prescription ceased to run as of that time. The answer to this contention is that good faith possession is not an essential element of a plea of thirty years prescription. It is well settled that possession for thirty years as owner whether in good or bad faith will support a plea of thirty years prescription. LSA-C.C. Article 852; Ses-sum v. Hemperley, supra.
Learned counsel for appellee also contends appellant’s plea of thirty years prescription is not well taken because defendant has not possessed adversely for a period of thirty years. In this regard it is contended that until the 1935 survey revealed appellant was not in fact the record owner of the property, appellant’s possession was ostensibly as owner by fee translative of title, consequently appellant’s adverse possession did not commence until said time which was less than 30 years prior to institution of suit. Again, the answer to this contention is that to support a plea of thirty years possession as owner whether in good or bad faith is all that is required. Foscue v. Mitchell, 190 La. 758, 182 So. 740. In the present case it is clear beyond doubt that from its very inception appellant’s possession has been as owner in that she claimed the property in question adversely to the entire world. Her possession in such capacity for an uninterrupted period of thirty years is all that is required to support her plea of thirty years prescription. Foscue v. Mitchell, supra.
Lastly, there remains appellee’s contention appellant may not rely upon the plea of thirty years prescription herein because, following the survey by Moore in 1935, appellant and her late husband on numerous occasions recognized appellee’s ownership of the area in dispute.
As argued by counsel for appellee our jurisprudence is settled to the effect that one pleading thirty years prescription in support of a claim to immovable property, must possess as owner and such claim is defeated if it appears the party pleading such prescription acknowledged, at any time before his possession covers a period of thirty years, that title or ownership of the disputed area was in his adversary. Foscue et al. v. Mitchell, 190 La. 758, 182 So. 740; Blades v. Zinsel, 15 La.App. 104, 130 So. 139.
In the case at bar, however, the record establishes that following Moore’s survey in 1935, a dispute arose between the adjoining owners as to precisely where the line lay. Nevertheless defendant and her family continued uninterrupted, open possession of the driveway as before without *660 any interference by plaintiff or his predecessor in title. The record further established that' defendant continued to claim the disputed area but on several occasions attempted to purchase the strip in controversy as a means of settling all doubt as to where the correct dividing line lay. The gist of defendant’s testimony is to the effect she and her husband claimed ownership of the area in controversy but offered to purchase merely as a means of compromising all differences existing between them and plaintiff and his authors in title. At no time did defendant concede plaintiff’s ownership. On the contrary, defendant’s testimony reflects that her offers to“ purchase from the plaintiff were intended merely as attempts to settle the dispute by paying any reasonable amount necessary to compromise their differences. Her testimony further reveals she did not know exactly what property was in dispute but that she desired clear title up to the fence or hedge which she considered the boundary. The response received in virtually each instance was the plaintiff’s position that the matter would have to be resolved by litigation. In substance her testimony on this vital issue was corroborated by the testimony of plaintiff’s brother, John Alva Branch. We conclude, therefore, defendant’s offers to purchase did not constitute recognition of plaintiff’s title within the purview of Foscue et al. v. Mitchell, supra, and Blades v. Zinsel, supra, but were merely attempts to compromise a disagreement without acknowledging or recognizing plaintiff’s title to the land in dispute. The aforesaid circumstances considered, such offers do not defeat defendant’s claim to the property in question.
Upon institution of suit by plaintiff herein our learned brother below ordered a survey of the adjoining estates be made by Clifford G. Webb, Civil Engineer and Surveyor, and a report of said survey be rendered to the court according to law. The survey, in the form of a map or plat dated October 22, 1962, accompanied by a process verbal regular in form, was filed of record November 2, 1962. Said map or plat of survey clearly shows the hedge line planted and maintained by plaintiff and his predecessors in title. According to Webb’s survey, said hedge commences on the west line of North Seventh Street at a point 11.5 feet north of the south line of plaintiff’s property as described in plaintiff’s deed and runs thence westerly in a meandering course a distance approximately 100 feet at which point an old fence commences and runs toward the rear of the estates involved. It further indicates the fence stops a few feet east of a shed situated in the northwest corner of appellant’s property which shed shows an encroachment of 5.5 feet onto the north half of Lot 4. It is to this hedge and fence line that defendant and her authors in title have possessed as owners for more than thirty years and which must therefore be recognized as the boundary between these contiguous estates.
In view of the conclusion herein reached with regard to appellant’s plea of thirty years prescription, it is unnecessary for us to consider the exception of ten years prescription made on behalf of defendant.
Accordingly, it is ordered, adjudged and decreed that the judgment of the trial court establishing the boundary between the estates of plaintiff and defendant at a point two feet north of defendant’s residence as shown on the Moore plat dated December 31, 1935, be and the same is hereby amended and revised and judgment rendered herein fixing the boundary between appellee’s and appellant’s estates as being that hedge line and fence commencing 11.5 feet north of the center line of Lot 4, Square 37, Poncha-toula, Louisiana, and running westerly from the west line of North Seventh Street to the rear of defendant’s property as shown on plan of Survey of Line between the North and the South Jdi of Lot 4, Square 37, Ponchatoula, Louisiana, made by Clifford G. Webb, Civil Engineer and Survey- or, dated October 22, 1962, and filed of record in this cause November 2, 1962.
*661 It is further ordered, adjudged and decreed that all costs of these proceedings including the cost of survey and appeal, be borne equally by appellant and appellee.
Amended and rendered.
REID, J., recused.