Statement of the Case.
MONROE, J.
In this case, which is an action for the establishment of the boundary between two lots in Opelousas, plaintiff appealed from a judgment rendered by the district court, and defendants (the heirs of Jules Perrodin, who died shortly after the suit was begun) answered the appeal, praying for an amendment, and subsequently asked that the case be remanded, for tbe admission of newly' discovered evidence; and, tbe Court of Appeal having denied the application to remand and given judgment in accordance with the theory propounded by plaintiff, defendants now pray that the judgment so rendered be reviewed by this court and reversed.
The evidence shows that square No. 11, in Opelousas, bounded by Landry, Main, Bellevue, and Court streets, was originally divided into four lots, and was intended to be 339 feet 2 inches square (each lot being 169 feet 7 inches square). It appears, however, that by a survey made in 1892 it was found that the square (or parallelogram) measured 342 feet 6 inches between Landry and Bellevue streets, and 343 feet 2 inches between Court and Main streets, and we are informed that the town council, in adopting the survey so made, added 4 feet to the east side of the square. Be that as it may, plaintiff purchased the property, upon the ownership of which it predicates this suit, from Miss Effie B. Ealer, on July 1, 1905, by the following description, to wit:
“A certain lot * * * at the corner of Main and Landry streets, bounded north by property of Leonce Sandoz, south by Landry street, east by Main street, and west by property of Jules Perrodin.”
At the date of tbe purchase the eastern boundary of the property of which Jules Perrodin was in possession as owner, and which his authors in title had possessed as owners for more than 60 years, was indicated by a fence, which had served the purpose which it then served, and still serves, of a fixed, visible, and practical boundary, during all that period. The most ancient deed exhibited by plaintiff is that from Robert Taylor to Michel Beck (of date June 19, 1819), whereby Taylor sells to Beck—
“a certain lot, being the southeast corner of a square now known as ‘square No. 11,’ * * * bounded on the south by Landry street, and on the each by Main street, according to a late plan * * * made by Josexlh Irwin in the year 1818; the aforesaid lot * * * being also bounded on the north by property now owned by William G. Knox, and on the west by Manon, a free woman of color, and land of the seller.”
In February, 1821, tbe property so acquired was sold by the parish judge at the in *584 stance of the executor of Beck’s widow to Keller and Fux, as — ■
“fronting on Main and Landry streets, and adjoining lands of the widow Lorenz, Robert Taylor, and Manon Baldwin, having one-third of the front of an entire lot on Main street by ■-- feet on Landry street, and being the southeast corner of the aforesaid lot,”
In December, 1825, Fux sold his interest in the property to Keller, and on February 23, 1829, under an execution against Keller, the sheriff sold to Pierre Louis Cahanin—
“all that certain lot * * * known * * * as lot No. 3, in square No. 11, bounded on the south by Landry street, on the east by Main street, on the north by a lot of Jean Louis Fux, and on the west by lot of Joseph Andrus and Robert Taylor.”
The next supposed link in plaintiff’s chain of title that we find is a deed, of date May 4, 1837, whereby Gustave Gahanin sold to Bignon & Martin — ■
“a certain portion of lot No. 3, in square No. 11, * * * having 1Í4 feet 6 inches fronting on Main street, to bo taken from the corner of the house and running back to the lot now occupied by Manon Baldwin, * * * and by the lot of Andre Lastrapes, ® * * being the same lot which the present seller acquired at sheriff’s sale on the 23d day of February, 1829.”
In June, 1840, Martin sold to Bignon an undivided half interest in the lot which they together had acquired from Gustave Cahanin, by a deed in which the lot is described as having—
“114 feet 6 inches front on Main street, and running back on Landry street 179Vi2 feet, to the lot now occupied by Manon Baldwin,” etc.
In September, 1849, Gustave Cahanin, as syndic of Bignon, sold to Roquet—
“a fraction of the town lot No. 3, in square No. 11, measuring 114 feet 0 inches on Main street and running back to the property occupied by Manon Baldwin,” etc.
On April 13, 1852, there was sold, under order of court, in the succession of Roquet, to a M. Perrault—
“a certain fractional lot * * * having 34 feet on Main street and running back- to the property of Jesse Hayes and Solomon Harmon, bounded north by the property belonging to Fremont Guidry and Roy, being a portion of lot No. 3, in square No. 11” and “part of certain property purchased by said Roquet, deceased, from Gustave Cahanin, syndic, * * * on the 7th day of September, 1849.”
On June 4, 1852, there was sold, under the same authority, to Charles N. Ealer—
“the residue of a certain lot No. 3, in square No. 11, * * * fronting on Main street and running back to the property occupied by Manon Baldwin, * * * bounded south by Landry street, east by Main street, west by said property of Manon Baldwin, and north by the property lately sold to Auguste M. Perrault.”
On July 24, 1854, Charles N. Ealer sold to Jesse Hayes — ■
“a certain fraction of ground situated in the town of Opelousas, ® * * measuring 20 feet on the north and south ends, and 30 feet on the east and west sides, bounded north by the property of A. M. Perrault, south by Manon Baldwin, east by vendor, and west by purchaser.”
On March 9, 1857, the sheriff, under an execution against Ealer, sold to John McDonald—
“one lot on the corner of Main and Landry streets, bounded on the south [north] by property now owned by Dr. Charles H. Beauchamp, south by Landry street, measuring 84 feet on Main street and 148 feet on Landry street.”
On October 11, 1862, John McDonald and wife donated to their daughter, Mrs. Charles N. Ealer—
“a lot * * * on the corner of Main and Landry streets, measuring 84 feet on Main street and 140 feet on Landry street, * * * being the same purchased by the said McDonald at sheriff’s sale * * * on the 7 th [9lh] March, 1857,” etc.
It was admitted on the trial below that Miss Eflle B. Ealer, plaintiff’s vendor, acquired the property sold by her by inheritance from her parents; but defendant’s counsel now say that the admission was made in error, and that in fact Miss Ealer acquired only as the heir of her mother, and in this it seems to us that they are fairly sustained by the record.
Defendants trace their title to Manon Bald *586 win, to whom, on July 1, 1815, Isaac Baldwin sold—
“a lot in the town of Opelousas, containing 50 feet by a depth of 169 feet 7 inches, * * * hounded on the north by the lot of Robert Taylor, on the south by the street, and on the west by the public square.”
This lot was sold by the sheriff April 5, 1823, as the “lot * * * now occupied by Manon,” to Joseph Andrus; and by act of October 5, 1833, Andrus reconveyed it to her as—
“the same now occupied by the said Manon Baldwin, and the same that she has occupied for a long time, said piece of ground * * • being part of lot No.-•, in square No.-, on the plan of the town, * * * to have and to hold “ * * for and during her natural life only, and no longer; it being agreed * * * that at the death of the said Manon Baldwin the aforesaid property is to return or revert to the said Joseph Andrus or his heirs.”
By acts dated, respectively, March 18 and 27, and April 19, 1854, and May 20, 1S56, the heirs of Andrus sold the property to Jesse Hayes; the act of March 27, 1854, in which the majority of the heirs joined, describing it—
“as a certain lot or fraction, of the lot * * * conceded by Joseph Andrus, their ancestor, * * * to Manon Baldwin * * * during her natural life.”
And on December 5,18S4, the heirs of Jesse Hayes sold the property to Jules Perrodin as—
“bounded * * * east by property of Mrs. Chas. N. Ealer, Dr. V. Boagne et al.,” and as “being the property on which now stands the Eureka Hotel.”
On February 28, 1888, Jules Perrodin sold to Auguste Perrodin, by the description:
“A certain lot, known as the Eureka Hotel property, bounded east by Charles N. Ealer and Dr. V. Boagne, west by Court street.”
And on June 21, 1889, Auguste Perrodin reconveycd to Jules Perrodin by the description:
“Un certain terrain sur lequel il y a un hotel, ‘Eureka Hotel,’ et une écurie * * * borné * * * est par la propriété de Chas. N. Ealer et Dr. Y. Boagni, ouest par la rue de la Cour [Court street].”
It is shown that Ealer cultivated and used the ground to the east of and up to the fence, and that he planted trees and maintained a brick walk along the front of his lot, from the corner of Main street to a point about opposite the end of the fence, and it otherwise appears that, so far from asserting any claim of ownership to land to westward of the fence,' he always recognized the fence as the boundary of his property. On the other hand, it appears that on the disputed territory immediately to the westward of the fence there has always been a stable, which was burned and rebuilt, between which and the fence there has been a driveway or passage. According to the plat or survey, made by order of the district court, the distance from the corner of Court street to the fence is 193 feet 7 inches, and from the fence to the corner of Main street 149 feet 7 inches, or 145 feet 7 inches, as the square be held to measure 343 feet 2 inches or 339 feet 2 inches.
The learned judge of the district court concludes his carefully prepared opinion as follows:
“But in the opinion of the court, at most, the plaintiff is entitled to the 148 feet frontage mentioned in the sheriff’s deed to McDonald, * * * and the 148 feet, according to Littel & Hollier’s measurement, carries the southwest corner of plaintiff’s lot about 4 feet west of the fence which defendants claim as the boundary fence, starting from the corner of Main street and Landry. The defendants earnestly contend that, as they and those under whom they hold have actually possessed the strip of 4 feet for over 60 years under inclosures, they are entitled to hold it under the provisions of Civ. Code, art. 852. There is no doubt that said strip has been held by defendants and their predecessors in tenure for over 60 years under inclosures, and if the question were res integra the court would sustain the defendants’ contention, under Civ. Code, art. 852. But in Railroad Co. v. Le Rosen, 52 La. Ann. 192, 26 South. 854, the Supreme Court seems to have interpreted the article (852) in a sense precluding defendants’ contention, and, while this interpretation by the Supreme Court is open to criticism *588 and doubt, the court feels compelled to follow it until such time as it may be modified or reversed.
“It is therefore ordered and decreed that the boundary line between plaintiff and defendants is hereby declared to be 148 feet west of the corner of Landry and Main streets, and that the present fence, now on the ground, be moved west, so as to give the plaintiff said 148 feet, as per plat and proces verbal of Littell & Hol-Iier, surveyors, on file; and it is ordered that the costs of the suit be paid, in equal proportions, by plaintiff and defendants.”
Our Brethren of the Court of Appeal, concurring with the trial judge that the defendants could not acquire by prescription beyond the limit of 169 feet 2 inches (on Landry street), as fixed by the deed from Isaac Baldwin to Manon of July 1, 1815, differed with him in other respects, and held that plaintiff is entitled to have the boundary established at a point 169 feet 7 inches to the eastward of Court street, and (allowing for 4 feet added upon the other side of the square) 173.7 feet to the westward of the corner of Main street.
Opinion.
We are unable to discover, after a careful consideration of the muniments exhibited by plaintiff, a sufficient basis for its assertion of title to any land to westward of the fence which has served as a fixed, visible, recognized boundary between the property owned and possessed by plaintiff and the adjoining property for upward of 60 years. Geron, a witness for the defense, testified that he was 78 years 8 months old, and that he had known the fence since he was 12 years old; and, whilst .there are several witnesses who corroborate his testimony (to the extent of their recollection), there, are none who contradict or dispute it. It also appears to us reasonably certain that Manon Baldwin occupied the property to the westward of the fence, under a claim of title adverse to that set up by plaintiff, from 1815 until the date of her death, and that those who have succeeded her .in title have so occupied it since that date. Manon’s title (from Baldwin), as we have seen, called for but 169 feet 7 inches front on Landry street; but the property was of little value in 1815, and it seems likely either that, as she found and took possession of it, the additional area, which is the subject of this litigation, was already actually inclosed with that covered by her title, or else that she caused the fence to be erected where it has since stood, and now stands, and thereby inclosed it; and in 1833,' when Joseph Andrus reconveyed to her the usufruct thereof for life, the property was described, not as measuring 169 feet 7 inches on Landry street, but as “a certain lot * * * being the same now occupied by the said Manon Baldwin and the same that she has occupied for a long time” — a description which included all the land within the limits of her inclosure, and which, in the main, was not modified in subsequent conveyances, since the heirs of Andrus (with the exception of one or two grandchildren, who executed separate conveyances) sold to Hayes their interest in the “lot, or fractional lot, * * * conceded by their ancestor to Manon Baldwin,” and the heirs of Hayes sold the property so acquired as “bounded * • * east by property of Mrs. Charles N. Ealer, Dr. V. Boagne et al.,” and as “being the property on which now stands the Eureka Hotel,” which latter description was followed in the subsequent transfers, and, as we understand the record, includes all the land between the fence and the corner of Court street. Upon the other hand, Taylor (under whom plaintiff claims), in 1819, sold to Beck “a certain lot,” the dimensions of which are not given, bounded on the west “by Manon, a free woman of color, and the land of the seller” (the latter part of the description referring to land owned by Taylor and lying to the north of Manon’s lot, which extended back from Landry street only 50 feet), and *590 there is nothing to indicate that Taylor owned, or undertook to sell, any part of the lot occupied by Manon, or that Beck understood that he had acquired any part of that lot. To the contrary, when, at the instance of the executor of Beck’s widow, the parish judge in 1821 sold the property that Beck had acquired, it was described as “adjoining lands of Manon Baldwin, having one-third of the front of an entire lot on Main street, by-feet on Landry street”' — a description which would be unaccountable if we were to assume that Beck had purchased the entire front of “an entire lot” on Landry street, since, though the parish judge may not have known the ‘dimensions of a lot according to the plan of the town which had been made during the preceding year, nevertheless, if it had been the intention to sell the frontage of an entire lot on Landry street, it would have been as easy for him to say so as for him to say that he sold “one-third of the front of an entire lot on Main street.” The vendees at the sale in' question were Keller and Eux, and Fux sold his interest to Keller, after which the whole property was sold, under an execution against Keller, to Pierre Louis Oahanin as “all that certain lot * * * known as lot No. 3,” etc., and there then appears to be a break in the chain; the next sale that we find being one from Gustave Oahanin to Bignon & Martin, in which the property sold is described as— 1
“a certain portion of lot No. 3, * * * having- 114 feet 6 inches fronting on Main street, « * * ancl running back to the lot now occupied by Manon Baldwin * * ® and * * * the lot of Andre Lastrapes,” etc.
We agree with our learned Brethren of the Court of Appeal that, as Manon was then occupying the property as a usufructuary, it was natural that' she should be referred to as the occupant, rather than as the owner. But the fact remains that she was occupying the property, that the property acquired by Bignon & Martin was sold to them as “running back to the lot now occupied by Manon Baldwin,” and that Bignon & Martin could not, under such a title, have claimed from their vendor any land beyond the boundary of the lot occupied by Manon, even if he (the vendor) had owned the whole of that lot. Nor was the situation altered by the fact that when, some three years later, Martin sold his interest therein to Bignon, the property was described as “running back on Landry street, 179 Vi 2 feet, to the lot now occupied by Manon Baldwin,” any more than it would have been altered if the western limit had been Court street and the description had read “running back 500 feet to Court street,” since in either case the monument would control the measurement. Moreover, when, in 1852, the syndic of Bignon made the sale to Ealer, the measurement on Landry street was omitted, and the property was merely described as “running back to the property occupied by Manon Baldwin,” and as “bounded ® * ® west by said property of Manon Baldwin.” It will be remembered, in this connection, that Manon’s original title called for but 50 feet of depth (from Landry street back), whilst Ealer’s title called for 114 feet 6 inches, less 34 feet (sold by the syndic to Perrault), or say S4 feet 6 inches, of depth, from which it follows that there was a strip, 34 feet 6 inches wide, which projected from the upper or westward side of Ealer’s purchase and overlapped the lot occupied by Manon until it reached the property owned by Hayes, which latter extended eastward from Court street above Manon’s lot. At all events, it seems to have been so understood, and Ealer sold to Hayes “a certain fraction of ground ® * * measuring 20 feet on the north and south ends and 30 feet on the east and west sides, bounded * * * south by Manon Baldwin, east by the vendor, and west by purchaser” — a description to *592 which he would hardly have subscribed if he had considered himself the owner of the land lying to the south of that sold, and which plaintiff is now claiming, under his title. Still remembering that the property purchased by Ealer was described as running back to that occupied by Manon Baldwin, it appears that when, in 1857, the sheriff seized and sold it, he described it as “measuring 84 feet on Main street, 148 feet on Landry street”; and when, in 1862, McDonald, the adjudicatee, and his wife, made the donation to their daughter, Mrs. Ealer, they described the property donated as “measuring 84 feet on Main street and 140 feet on Landry street, * * * being the same property purchased by said McDonald at sheriff’s sale,” which would hardly have been done if it had been supposed that Ealer’s title called for 169 feet 7 inches (or 173 feet 7 inches) on Landry street — the fact being, as we take it, that, Blanon having died, the description “running back to the property occupied by Blanon Baldwin” was no longer applicable, and the parties undertook to substitute the measurement, and the further fact being that, as Ealer had owned and possessed only up to the fence constituting the eastern boundary of the property which Blanon had occupied, BlcDonald and his wife could have acquired no more than that under the execution against him, and could have donated no more to Blrs. Ealer, and it is evident that it was so understood, since, during the 43 or 44 years which intervened between the donation and the filing of this suit, no one ever suggested that Mrs. Ealer owned any land to the westward of the fence.
Defendants’ application (to the Court of Appeal) to remand was predicated upon allegations to the effect that the counsel originally employed had died before the taking by plaintiff of the appeal; that the counsel then employed (being defendants’ present counsel) recalled, and discovered, that within four years after his purchase Ealer had mortgaged the property acquired by him as-measuring 84 feet on Blain street by 148 feet on Landry street; that he had subsequently on two occasions joined his wife in mortgaging it by the same description; and that, in a certain suit brought by his wife, to which he was a party, the measurement of the property had been adjudged to be as thus stated. Upon the showing made, we should be inclined to think that the case ought to be remanded, if we considered that any further evidence of the character indicated were necessary ; but as we have concluded, from the evidence already adduced, that plaintiff has no title to any land to the westward of the fence, which for more than 60 years has separated, and now separates, the property owned by it from the property adjoining, and as during that long period defendants and their authors have held undisturbed possession as owners of the adjoining- property, we are of opinion that the additional evidence, referred to in defendants’ motion to remand, is not needed. And, in view of the conclusion stated, we find it unnecessary to determine, and hence express no present opinion upon, the question whether, under article 852 of the Givil Code, a party to an action of boundary, who claims to have acquired beyond the limits of his title by “uninterrupted possession during 30 years,” can, for the purposes-of such claim, add to his own possession that of his authors in title. Giv. Code, art. 845, provides that, in cases such as this, “the limits [of the property, the boundaries' of which are to be fixed] must be fixed according-to the respective titles; in the absence of title on both sides possession governs.” And' as plaintiff has no title to the land to the-westward of the fence, and defendants are-in possession of the land so situated, asserting title to, and claiming, nothing to the-eastward of the fence, we need go no further in order to establish the boundary at the line of the fence.
It is thefefore ordered, adjudged, and de *594 creed that the judgment of the Court of Appeal, here made the subject of review, be annulled, avoided, and reversed, and that the judgment of the district court be amended, in that it is now adjudged and decreed that the boundary line between the property of the plaintiff and that of the defendants be, and the same is hereby, fixed upon the line of the present fence now dividing said properties, say 193 feet 4 inches from the southwest corner of the square No. 11 in which said property is situated.
It is further adjudged and decreed that the costs of the appeal and of this application be paid by plaintiff, and that those of the district court be divided in the proportion of one-half to plaintiff and one-half to defendants.