ST. PAUL, J.
On July 14, 1898, defendant acquired from Prank Stampley 80 acres of land in Ascension parish, “bounded north by Paris Moore, east by Augustin Daigle, west by Fred Heath, and south by lands of A. B. Booth.”
On February 15, 1908, plaintiff acquired from A. B. Booth a certain tract of land “containing 81.35 acres, more, or less, as surveyed by J. W. Monget, civil engineer,” and composed of 60.17 acres in section 35 (township 8 south, range 2 east) and 21.18 acres in section 37 (do).
I.
Plaintiff alleges:
(2) That petitioner’s property is bounded on the north by lands owned by Olifton W. Brown,
(3) That the boundary line between the properties of petitioner and said O. W. Brown has not been (correctly?) established and marked and located by and between petitioner and said Brown. That said Brown has taken possession of land belonging to petitioner.
Wherefore plaintiff prays, that the boundary line be surveyed and established, to which defendant pleads the prescription of 10 and 30 years.
II.
If we are to look only into the chain of title of defendant (which is in the record) and must disregard established boundaries and physical possession, then defendant owns only the north half of the northeast quarter of section 35, aforesaid; and his south boundary is the line dividing his own north half from the other (south) half of the same quarter section (in which plaintiff’s land lies). And this is where the surveyor Lovell placed it, according to titles only.
We said that according to titles “defendant ' owns only the north half of the northeast quarter of section 35,” for this reason: That his vendor, Stampley, owned no more, having purchased by that description.- But it will be observed that defendant himself did not purchase by that description; he purchased to the boundary line of the A. B. Booth lands (now plaintiff’s). Nevertheless, Stampley and Ms vendors had long possessed beyond the limits of their titles.
For the evidence shows conclusively that as far back as 1865 (more than 50 years before the filing of this suit) those from whom defendant derives title had possessed as far as a certain “gully” or water course, considerably to the south of the aforesaid half-section line; on the edge of which they had set up a fence which marked the limit of their possession and served as the boundary between their property and the property of their neighbor to the south. That fence stood as it was until 1908, when Monget surveyed the land for plaintiff, and was then moved some 60 feet further north; to the place at which it now stands, which is still some 30 feet south of the aforesaid half-section line.
III.
Boundaries may be fixed either judicially or ecotrajudicially (i. e., by consent). R. C. C. art. 832. The object of an action in boundary is to separate physically one estate from another, and mark the limits of each by visible bounds. R. C. C. art. 826.
(a) The action of boundary lies therefore in these three cases only: (1) When the adjoining estates have never been so separated; (2) when the two estates have once been separated, but the physical bounds are no longer visible; and (3) when the bounds have been fixed incorrectly. See R. C. C. arts. 823, 853.
(b) When the two estates have never been separated, the boundaries must be fixed according to the respective titles. R. C. C. art. 845. When the two estates have once been separated, but the monuments have disappeared, they must be replaced as they formerly stood. Zeringue v. Harang, 17 La. 349. When the bounds exist but have been *622 placed incorrectly, the error may be rectified. R. C. C. art. 853.
 (c) As long as there exist no physical bounds, whether because none have ever been placed or because those once placed have disappeared, the action to place or replace them cannot be prescribed against; for every one is entitled at all times to have his estate separated from that of his neighbor. R. C. C. art. 825. But if visible bounds actually exist, which have been placed there by consent, the action to rectify any alleged error in the location thereof must be brought within 10 years, or it will be prescribed. R. C. C. art. 853. And manifestly the action to rectify boundaries lies only when these have been fixed extrajudicially; for if judicially fixed, the question of boundaries is then merged, in the judgment, and becomes res judicata; which judgment, like any other, cannot be attacked for error but only for fraud, and then only within a year. C. P. art. 613.
IV.
The Code provide^ that when bounds are fixed, whether judicially or extrajudicially, it shall be done by a sworn surveyor, and a formal proces verbal thereof shall be made. R. O. O. art. 833.
In Buisson v. Grant, 4 Rob. 360, 362, this court held that parties were at liberty to employ others than “state surveyors” to fix the limits of their lands; although “such a survey and fixing of limits will not have the same binding force and effect * * * as if made by the parish surveyor, nor will the proces verbal prove itself, and obtain full credit in tho courts of this state.” In Blanc v. Duplessis, 13 La. 334, the court admitted parol evidence of a boundary fixed by informal agreement and acquiesced in for nearly twenty years. In Keller v. Shelmire, 42 La. Ann. 323, 325, 7 South. 587, this court upheld a boundary which “had been long established and recognized by antecedent authors of the respective titles.” In Lemoin v. Moncla, 9 La. Ann. 515, this court held that a well-known dividing line between two estates, recognized and established for more than 20 years between those under whom plaintiff and defendant respectively claimed, would not be disturbed. In Riddell v. Jackson, 14 La. Ann. 135, in Lyons v. Dobbins, 26 La. Ann. 580, and in Hill v. Meyer, Man. Unrep. Cas. 265, this court held that visible bounds should prevai| over the measurements and imaginary limits of surveys referred to in the titles.
Hence it will be seen that an estate may have well-established limits fixed otherwise than by a survey.
V.
ihe sanctity which all nations have at all times attached to land boundaries is a part of general history. The Romans even deified such boundaries under the pseudonym of the god “Terminus,” who had neither feet nor arms, so that he could not move. This was symbolic of their jurisprudence; and that jurisprudence is ours.
For, one who seeks to maintain an existing visible boundary is not seeking to acquire land by the prescription acquirendi causa, but only to preserve the integrity of the land he already holds by title. And it is for that reason that R. C. C. art. 852, reads differently from article R. C. C. art. 3493, for the two articles differ ioto ccelo in their meaning and effect.
R. C. C. art. 3493, must he read in connection with articles 3494, 3495, and 3503. These read as follows:
“Art. 3493. The possessor is allowed to make the sum of possession necessary to prescribe, by adding to his own possession that of his author, in whatever manner he may have succeeded him, whether by an universal or particular, a lucrative or an onerous title. [Italics ours.]
“Art. 3494. By the word author in the preceding article, is understood the person from whom another derives his right, whether by 'a universal title, as by succession, or by particu *624 lar title, as by sale, by donation, or any other title, onerous bi~ gratuitous. * * *
“Art. 3495. But to enjoy this advantage, the different possessions must hone succeeded each other without interval or interruption. [Italics ours.] * * *
“Art. 3503. How favorable soever prescription may be, it shall be restricted within just limits. Thus, in the prescription of 30 years, which is acquired without title, it extends, only to that which has been actually possessed by the person pleading it. [Italics ours.]”
These articles are easily understood. If A. take possession of a tract of land and k.eep it for 25 years, then sell the north half thereof to B., the latter cannot at the end of another five years acquire the whole, of the tract. For if B. take possession of only the north half, then article 3503 applies, and he cannot acquire the south half because he has not been in actual possession thereof. True in that case the south half is still lost to the -owner, because the possession of A. continues; not having been interrupted. On the other hand, even if B. take possession of the whole tract, he still does not acquire the south half because, as to that A. was not his author (i. e., he derived no right through A.); and the only effect of his taking possession is to interrupt the possession of A., so that the south half simply remains the property of the original owner until B. himself has possessed it for 30 years. So much for the prescription of 30 years acquirendi caupa.
Let us then take a case of boundaries. Say that A. buys a tract of land bounded on the north by the line X, and that O. acquired the adjoining tract bounded on the south by the same line X. The former then builds his fence or wall N feet north of the line X; that is to say, on the land of O. After 25 years have elapsed, A. sells to B. his trpct of land, describing it as bounded on the north by the lands of O., and B. goes into possession of the whole tract up to the fence or wall aforesaid. Five years after that, being 30 years after the fence or wall was set up, 0. brings an action to fix the boundary between his property and that of B. And this is what R. C. C. art. 852, says:
“Art. 852>. Whether the titles, exhibited by the parties, whose lands are to be limited, consist of primitive concessions or other acts by which property may be transferred, if it be proved that the person whose title is of the latest date, or those under whom he holds, have enjoyed, in good or bad faith, uninterrupted possession during thirty years, of any quantity of land beyond that mentioned in HIS title, he will be permitted to retain it, and his neighbor, though he have a more ancient title, will only have a right to the excess; for if one cannot prescribe against his own title, he can prescribe beyond his title or for more than it calls for, provided it be by 30 years possession. [Italics and capitals ours].”
It will be observed that in such a case the holder of the junior title may retain any quantity of land “beyond his title” which he or those under whom he holds may have possessed for 30 years.
Note well that the title of the. junior title holder need not call for this surplus of land; for the words of the law are that he shall be entitled to retain the land “beyond Ms title.” And, as we have shown, this is absolutely not the. case under the prescription acquirendi causa.
So that we must conclude either that R. C. C. art. 852, is inaccurate in its terms, and means the same as R. C. C. arts. 3493, 3494; or that the article was actually intended to mean something different.
But the authors of our Code were men of ability and learning; their ideas of the law were exact and not hazy; they understood perfectly the language they used, and'wrote what they wrote, not hastily, but with extreme care. Hence we ‘ cannot assume that when they sg,id two different things, nevertheless they meant only one and the same.
And if they meant something different, then it was this: That where a tract of land had been possessed under visible’ bounds for *626 30 3-ears, such visible bounds should prevail over the ideal bounds called for in the titles.
VI.
We have already cited a number of the earlier cases in which this court recognized that boundaries long established should not be disturbed. We come now to the later cases.
In Wemple v. Albritton, 154 La. 359, 97 South 489, this court held, in effect, that in the sale and delivery of a plantation having visible bounds the physical boundaries should prevail over ideal bounds given in the deed of sale, and held distinctly that the purchaser i succeeded to the possession of his vendor to the full extent of the property delivered under the deed.
In Broussard v. Guidry, 127 La. 714, 53 South. 967, this court maintained a boundary which had stood undisturbed for more than 30 years; although such boundaries did not correspond with the original survey, and the defendant had in her possession 90 acres more than her titles called for, whilst plaintiff lacked more than 80 acres eof what his titles called for. The court said :
“Defendant and her authors having had possession, we maintain the prescription of 30 years.”
See, also, Broussard v. Guidry, 114 La. 913, 38 South. 616.
In Opelousas Bank v. Perrodin, 121 La. 581, 46 South. 658, this court declined to pass directly on the meaning of R. C. C. art. 852, above quoted; but none the less applied it practically in a case where a boundary had stood undisturbed for 60 years although plaintiff was short 24 feet of what its title seemed to call for, and defendant was in possession of exactly that amount in excess Of what his title called for; and although there was a surplus of four feet above what both titles called for, which might have been divided between them. R. C. C. art. 851.
VII.
In Harang v. Golden Ranch, 143 La. 982, 79 South. 768, this court decided nothing more than this: That an owner of immovable property did not lose his- title thereto by abandoning possession thereof for more than 30 years, so that the first to take possession thereof might oppose to him the prescription of 30 years under R. C. C. art. 3548, declaring that—
“All actions for immovable property, or for an entire estate, as a succession, are prescribed by thirty years.”
It was held that he who would in such cases plead the prescription of 30 years must himself have been in possession during said 30 years, citing R. C. C. arts. 3499 and 498.
A good deal was said in that case about “tacking possessions,” which seems to have no special bearing on the facts of the case, and was doubtless said only arguendo. But the fact is that the case involved a question of title and of prescription by which land is lost by one person and acquired by another. It had nothing whatever to do with the question of boundaries and the time and conditions necessary to perpetuate the same.
It is our firm conviction that the public interest requires that boundaries established for more than 30 years should not be disturbed ; and we think the law so provides.
We have examined the case of Railway Co. v. Le Rosen, 52 La. Ann. 192, 26 South. 854, and there is no doubt that it holds views opposed to those herein above stated. But that case stands alone, and since we cannot accept it as sound in, law, we must perforce overrule it. Under that decision no boundary could ever be fixed permanently; and if perchance it should be discovered that Bienville had misread the plan of his engineer and located his “place d’armes” a few hundred feet higher up, or lower down, the Mississippi than such plan calls for, there is no title to a foot of land in the city *628 of New Orleans, which would not eallo for correction; and since the land which each successive purchaser took possession of would not be the same land which his title called for, it follows (if we accept the Le Rosen Case) that he could not “tack” onto his own possession that of his supposed author, and thus could not protect his boundaries, by the prescription of 30 years. That would he against all common sense; and law is common sense, as far as legislators, courts, and men of law will let it remain so.
VIII.
The district judge sustained the prescription of 30 years and dismissed plaintiff’s suit; the Cóurt of Appeal reversed his judgment, overruled the plea of prescription of 30 years, and remanded the case for further proceedings. We think the Court of Appeal erred and that the district judge was correct. . .
Decree.
The judgment, of the Court of Appeal is therefore reversed and set aside; and it is now ordered that the judgment of the district court be reinstated and made the final judgment in this case,
Rehearing refused by Division A, composed of O’NIELL, C. J., and ROGERS and BRU-NOT, JJ.