The facts giving rise to this boundary action are clearly and fully set forth in our original opinion, and only those necessary for a proper discussion on this second consideration will be restated.
A tract of land subdivided into town lots by the surveyor, Jim M. Williams, in the year 1901, for its owners, the several heirs of Mrs. Mary E. Land, deceased, was the west half of southwest quarter (W. 1/2 of S.W. 1/4) of Section 6, Township 17 North, Range 13 West. In connection with the undertaking he prepared, and caused to be recorded in Book 28, Page 462 of the Records of Caddo Parish, Louisiana, a map or plat of the subdivided property bearing the title "Land Subdivision"; also he made a survey of the various lots platted.
A map of a subdivision is the plan used in subdividing the property, and it reflects the measurements, directions, points, boundaries, angles and other like essentials. A survey is the operation of finding and delineating those essentials on the ground.
Running north and south along the west edge of the subdivision, the map discloses, is a 30-foot space set apart and designated as Land Avenue (now known as Line Avenue), adjacent to which, on its east and along the entire length, is the west property line.
The range line, running north and south, that separates said Section 6 from the land immediately west of it is clearly the western boundary of the subdivision. The subdivided property is the west eighty acres of its southwest quarter (S.W. 1/4), and the map does not reveal the reservation of any triangular strip between such range line and the subdivision's western boundary. Furthermore, there is no showing that said section is irregular in shape.
The recorded Williams' plat shows the north boundary line of the Land Subdivision as having a bearing of north 89 degrees 45 minutes west, this being the same as south 89 degrees 45 minutes east; and it further reveals the existence of an angle of 90 degrees 15 minutes formed by the intersecting of that line, when extended west of the subdivision's northwest corner, with the west boundary line running south from that corner. This angle, in other words, is west and a complement of the interior 89 degrees 45 minutes angle in the northwest portion of the subdivision.
There is no dispute that said subdivision's northwest corner, being also the northwest corner of the west half of southwest quarter (W. 1/2 of S.W. 1/4) of Section 6, is marked on the ground by what is known as the Land Monument, found in the intersection of Olive Street and Line Avenue. All agree on this fact. This monument connects with a line north of it, generally acknowledged and accepted as the range line, which passes through two established corners along a bearing of north 0 degrees 2 minutes east, or south 0 degrees 2 minutes west. The range line south of such monument would have the same bearing, or be a prolongation of the line to the north, for there is no change in its course or direction at or below that corner; this we held in the first consideration of the case.
The Barnes survey, made for the purpose of locating Lots 98 and 99 and which is thoroughly discussed in our original opinion, began at the Land Monument. From this point Mr. Barnes proceeded south 0 degrees 2 minutes west, or along the correct range line, to the center of College Street. He then turned and ran east, following the directions, distances and measurements revealed by the Williams' map, and bounded the two lots.
Mr. Dutton also began his survey at the Land Monument. But he did not follow the above described true range line having a bearing of south 0 degrees 2 minutes west which forms the western boundary of the subdivision. Instead he set his instrument on the Land Monument and sighted east along the center line of Olive Street, using two old iron pins as guides, one located at the center of Irving Place and the other at the center of Dillingham Street. The line through these pins, according to the evidence, has a bearing of south 89 degrees 58 minutes east and is the southern boundary of a subdivision lying to the north. This bearing, it is to be seen, differs by 13 minutes from the bearing of south 89 degrees *Page 61 
45 minutes east given on the Williams' plat to the northern boundary of the Land Subdivision.
From the sighted direction and line Mr. Dutton turned right on an angle of 89 degrees 45 minutes, this being the complement of the above described opposite angle of 90 degrees 15 minutes, and ran, according to that angle, toward the south to the center of College Street. This center line was penetrated three and six-tenths feet east of the point where the Barnes' survey joined it. Then he ran east along College Street and completed his location of the lots.
Lot 98 as found by Mr. Dutton, and also by surveyor Lyons who agreed with him, contains all the improvements of defendant, Mrs. Koch. The west edge of her driveway falls on the line dividing it from Lot 97 on the west. The easternmost portion of her dwelling lies six tenths of a foot west of its east boundary.
It is the testimony of Mr. Dutton that he tried, as near as he knew how, to make his survey of the lots exactly as he thought Jim Williams laid them out on the ground. Propounded to him was the question: "As a matter of fact, what you actually did was, to the best of your knowledge and ability, to retrace the steps of Jim Williams when he surveyed and staked out this property?" He replied: "That is exactly it."
And in this connection, the following quotation from Mr. Dutton's proces verbal is pertinent:
"In order to satisfy myself that the boundary so fixed coincides with the old lines laid down by the original surveyors platting this Land Subdivision, I measured east along the alley from Line Avenue in the rear of Lots 87 and 88 and find old occupations that check namely between Lots 82 and 81, 81 and 80, 80 and 79, 76 and 75, 88 and 89; an old fence in Lot 90, and a hedge between 96 and 97; also along alley in rear of Lots 145 and 146; an old fence in Lot 144, a fence between 140 and 139, 139 and 138, and 138 and 137. These old property lines are in the near vicinity of lots surveyed."
According to surveyor Barnes, the work of Mr. Dutton approximately tracked the survey made by Jim Williams in 1901. The Williams survey, said that witness, was between three and four feet east of the true range line at the center of College Street, just as Dutton found, and was some 13° feet east of it at the southwest corner of the subdivision.
With further reference to his own survey, and to the efforts of Jim Williams in 1901 in subdividing the 80-acre tract in question, Mr. Barnes testified: "I followed the map but I did not follow the survey as made by Mr. Williams on the ground. * * * The map is correct but the survey on the ground is not correct. * * * The map is all right but the survey made by Mr. Williams did not follow the true section lines and was erroneous." This testimony, considered along with the fact that Mr. Dutton retraced the Williams' survey, indicates the reason for the discrepancy existing between the surveys of Williams and Dutton on the one hand and the survey of Barnes on the other.
After our second thorough consideration of all of the pertinent evidence adduced in the case, it is now our firm conviction that Williams accurately mapped or platted the property sought to be subdivided, that is his recorded plan of the Land Subdivision is correct; but, in our opinion, he failed to make a survey, or more specifically he incorrectly delineated on the ground the true boundaries, as reflected by his prepared map.
As before shown, and as is disclosed by the plat, the mentioned range line is the subdivision's western boundary; however, on the ground, after starting at the Land Monument, Mr. Williams staked or laid out the western boundary east of the proven range line. Mr. Dutton, as has been previously stated, retraced the groundwork of surveyor Williams, and it must likewise be said that his survey was not made in accordance with the plat. Under the Barnes survey the subdivision's western boundary coincides with the true range line, and it, therefore, provides a proper reproduction on the ground of the platted lots involved in this controversy.
Interesting, and certainly relevant to this discussion, is the further testimony of Mr. Barnes that if Mr. Dutton, in sighting down Olive Street at the commencement of his survey, had used the bearing of south 89 degrees 45 minutes east, shown on the map for the north boundary of the subdivision, instead of using a non-platted bearing of south 89 degrees 58 minutes east as was done, and had then turned the mapped and employed angle of 89 degrees 45 minutes in fixing his line towards the south, their surveys would have been practically identical. *Page 62 
But notwithstanding the fact that defendant's lot No. 98 was originally erroneously surveyed, we think that these plaintiffs cannot succeed in this boundary action because of its being barred by the prescription of ten years, which defendant specially pleads. Sustaining this holding are the provisions of Louisiana Civil Code Article 853 reading:
"If the boundaries have been fixed according to a common title, or according to different titles, and the surveyor had committed an error in his measure, it can always be rectified, unless the part of the land on which the error was committed, be acquired by an adverse possession of ten years, if the parties are present, and twenty years, if absent."
In construing that article, along with other provisions found in Book 2, Title 5 of the Civil Code, our Supreme Court held in Opdenwyer v. Brown, 155 La. 617, 99 So. 482, 483, that the action of boundary lies in only three cases, namely: (1) When the adjoining estates have never been separated physically and the limits of each marked by visible bounds; (2) When the two estates have once been separated, but the physical bounds are no longer visible; in which event the action is restricted in purpose to the replacing of the monuments as they formerly stood; and (3) When the bounds exist but have been placed incorrectly.
As to the mentioned first two cases, according to that authority, the action cannot be prescribed against; because everyone is entitled at all times to have his estate separated from that of his neighbor. In speaking about the third possible instance, however, the court said:
"But if visible bounds actually exist, which have been placed there by consent, the action to rectify any alleged error in the location thereof must be brought within 10 years, or it will be prescribed. R.C.C. art. 853."
The boundaries involved in the instant case, as staked under the Williams' survey, were fixed according to a common title and by consent. The affected two lots were, as before shown, platted and laid out in the formation of the Land Subdivision in 1901 under an agreement between the then owners, the heirs of Mrs. Mary E. Land, deceased. They, together with other lots, were afterwards acquired by these plaintiffs, residents of Shreveport, Caddo Parish, Louisiana. Later, and specifically on June 14, 1923, defendant, Mrs. Koch, became the owner of Lot 98 through mesne conveyances from plaintiffs.
When purchased by Mrs. Koch, Lot 98 did not bear the monuments placed there by Williams in 1901; but its boundaries, as fixed under the original survey, were plainly delineated by means of the dwelling and other improvements located thereon. As before shown, the easternmost portion of the dwelling was only six-tenths of a foot from the east line, while the western edge of the driveway coincided with the line dividing such lot from Lot 97. Also, there stood at that time, in the vicinity of the disputed property, numerous other dwellings and permanent improvements, that had been erected according to the Williams' survey. Hence it must be said that visible bounds of Lot 98, as originally established, actually existed at the time of defendant's purchase in 1923.
This boundary action was not instituted until the year 1940; and, by reason of the intervention of a period of more than ten years during which defendant has been in undisturbed possession of said lot, prescription stands in bar of its success.
In reaching our decision on the question of prescription we have not failed to consider the jurisprudence of this state, cited by plaintiffs' counsel, holding that Civil Code Article 853 must be construed with reference to the other codal articles dealing with the surveying of land, particularly Civil Code Article 833 which requires that the limits be fixed by "a sworn surveyor of this State, who shall be bound to make a proces verbal of his work * * *." In this connection it may be said that Jim Williams was a qualified and reputable surveyor and that his recorded map carried the approval and signature of the Parish Surveyor; but it is not shown that he was sworn or that he made a proces verbal of his work. However, in Opdenwyer v. Brown, supra, the Supreme Court said, after referring to Civil Code Article 833, that "an estate may have well-established limits fixed otherwise than by a survey"; and it discussed and approved earlier jurisprudence in which there were upheld certain boundaries that had not been fixed in strict accordance with the provisions of that article.
Therefore, for the reasons above given, the former decree of this court is annulled and vacated, and the judgment of the district court is reversed and set aside; and *Page 63 
it is now ordered, adjudged and decreed that defendant's plea of ten years' prescription be sustained and that the demands of plaintiffs be rejected.
All costs of both courts, including the fees of the surveyors as fixed by the district court, shall be paid by plaintiffs.
In view of the importance of this case, and of the fact that the plea of prescription was not considered by us on the original hearing, the right of filing a motion for a second rehearing is reserved to the litigants.
DREW and TALIAFERRO, JJ., being of the opinion that the plea of prescription is well founded, concur in the judgment sustaining the same.
They do not agree with said opinion wherein it is stated that the Barnes survey is the correct one in the case. They are of the opinion that it is unnecessary to pass upon the correctness of either survey since the judgment is based entirely upon the plea of prescription.