FRUGÉ, Judge, ad hoc.
This is a boundary action instituted by plaintiff who owns property North of the property of the two parties made defendants.
Plaintiff alleges that the boundary line between his property on the North and that of the defendants on the South has never been determined judicially or extra-judicially.
The defendants filed an exception of no cause of action which exception of no cause of action was referred to the merits by the Trial Judge and after hearing the case on the merits, the Trial Judge ruled in favor of the defendants. Defendants contend that plaintiff having alleged that there has never been any previous fixing of the boundary, either judicially or extraju-dicially, and because some surveys were made previous to the survey made by the Surveyor appointed by the Court to fix the boundaries plaintiff’s suit must be dismissed. They allege that the proper action by plaintiff is an action to restore the old fixed lines or to set aside as incorrect prior surveys. We do not believe that the exception has merit.
An action in boundary lies in three situations, namely: (1) where no boundary has ever been made, (2) where the boundary, although once made, has *857 been completely Eradicated, and (3) where the boundaries have been fixed incorrectly. See Opdenwyer v. Brown, 155 La. 617, 99 So. 482; Article 823 LSA-Civil Code. The facts reveal that there is no natural or artificial marks which divide the properties of plaintiff and the defendants. While there was a fence at one particular time separating the properties of plaintiff and the defendants, it is no longer there, nor did it ever completely separate the properties of plaintiff and the defendants. Accordingly, under the jurisprudence laid down in Opdenwyer v. Brown, 155 La. 617, 99 So. 482, supra, and in Article 823 of our LSA-Civil Code, plaintiff does have a cause of action for the fixing of the boundaries between his property and the property of the defendants, and, accordingly, the exception filed by the defendants which are again being urged on appeal are overruled and not well founded. Furthermore, after reading the record, we do not believe that there was actually any fixing of the boundary between the respective estates as contended by the defendants, and for that further reason the exception filed by the defendants is not well founded.
The facts reveal that one Herbert N. Bridges, the father of one of the present defendants, in the year 1909 acquired from his father, Neaphus T. Bridges, 320 acres of land in Headright 43 in Section 39, T-l-S, R-6-E, by bounds. Several years later, in November, 1915, one A. B. Lee, Surveyor, was called upon to make a survey of the division line between the property of the father and the son and after the survey was made, both Herbert N. Bridges and Neaphus T. Bridges signed an instrument establishing the dividing line between their respective properties, Nea-phus T. Bridges owning South of the line and Herbert N. Bridges North of the line. No reference whatever is made to the acreage in this agreement and there is no reference to the previous deed between the parties. It is obvious therefor, that even if Herbert N. Bridges could have been considered as being limited to 320 acres by his original deed, he was not so limited subsequent to the signing of the boundary agreement for the agreement in effect amounts to a conveyance by Neaphus T. Bridges to Herbert N. Bridges of all of that land that he might have owned North of the dividing line so established by the two parties. Plaintiff’s title is based upon two deeds out of Herbert N. Bridges, the first to R. E. Travis, dated January 22, 1917, conveying 30 acres of land in Headright 43, to be taken from the North end of Vendor’s land, and the second deed from Herbert N. Bridges to Elijah T. Tate, dated October 3, 1923, conveying 110 acres to be taken off of the Northern end of a certain tract of land owned by the Vendor in Sections 43 and 29, T-l-S, R-6-E. It is thus apparent that the title of the plaintiff is the North 140 acres of the original tract of land acquired by Herbert N. Bridges from Neaphus T. Bridges and that his boundary on the South is that of his ancestor in title, Herbert N. Bridges. Accordingly, we. have here a case where the owner of 320 acres of land, more or less, sold off the northern 140 acres of his property to someone else and fixed the South boundary as property of his own. The boundaries on the North, East and West of the property sold off by Herbert N. Bridges go to the limits of his property, and the only possible basis of fixing the South line is to ascertain how far down from the Northern portion of his original property one must go to give plaintiff his 140 acres of property. Our Supreme Court says in Meyer v. Comegys, 147 La. 851, 86 So. 307, that where no courses or distances are stated in the deed, the acreage or quantity of the land conveyed which is stated prevails.
Accordingly, we believe as the trial judge did, that plaintiff is to be given the North 140 acres of ground which is all his title calls for, and it is self-evident that the only proper way to survey the land would, first be to locate the North line of plaintiff’s property, then run down *858 a sufficient distance to endose an area of 140 acres.
After this suit had been filed by the plaintiff, the Trial Judge had appointed one William A. Tycer to inspect the premises and make a survey. However, William A. Tycer had previously made a survey for the plaintiff, and, accordingly, by joint motion by plaintiff and defendants, Mr. Clifton G. Webb, was appointed to make the survey. Both William A. Tycer and the Court appointed surveyor, Clifton G. Webb, did not make any effort to locate the North line of the property of plaintiff, but instead attempted to fix the boundary line by finding the old boundary agreement between Herbert N. Bridges and Neaphus Bridges and starting from that point, they surveyed 180 acres for the defendants. It is evident, after reading the record, that the surveyors were in error in starting at the South boundary of the common author in title of both plaintiff and defendants, Herbert N. Bridges. Plaintiff’s author in title had a more ancient title as plaintiff’s and defendants’ common author in title, Herbert N. Bridges, had sold the Northern 140 acres of his land to the authors in title of plaintiff, from which plaintiff derived his title, and, accordingly, it was necessary that said surveyors, in order to locate the correct boundary line was to locate the Northern line of plaintiff and then run down a sufficient distance to enclose an area of 140 acres of ground. The procés-verbal filed by the Court appointed engineer and surveyor and his testimony and the testimony of Mr. Tycer revealed this, and we concur with the reasoning of the Trial Judge in that said two surveyors started from the wrong point in trying to determine the boundary between plaintiff and defendants properties.
The record reveals that one Angus Lee had made a survey of the properties in 1927 or 1928, but there is no copy of this survey in the record. One Mr. O. C. Hollister, a registered surveyor, testified on behalf of the defendants. He testified that he was called upon to check on an earlier survey made by Mr. Lee. He testified that one of the defendants, namely, J. W. Travis, called upon him to make this survey on July 12, 1951. He stated that John W. Travis, the defendant, was there, one Charley Carter and the plaintiff, W. L. Travis. He also testified that he believed that one Lee Travis was there and was helping at the time. He stated that later Mr. Arland Bridges, the other defendant, asked him to check his line out and he started with what was claimed and shown to him as the old corner where the prior surveyor, Angus Lee, was supposed to have started. The Plat of Survey which Mr. Hollister made, was introduced in evidence and explained by him. Mr. Hollister testified that the letter “A” shown on his Plat of Survey was the Northeast corner of the property belonging to the plaintiff, W. L. Travis. He testified that from the letter “A” which was the Northwest corner of plaintiff’s property he proceeded South 20 chains and 16 links and ran right over an old line fence supposed to have been J. W. McNabb’s corner, and that 23 chains 16 links South from the point which he considered the Northwest corner of plaintiff’s property, it would give plaintiff .140 acres. He testified that 23 chains, 16 links South of the point which he had marked as the Northwest corner of plaintiff’s property, the plaintiff’s old fence did turn to the East. His testimony was to the effect by starting at the point marked “A” which was shown on the Plat of Survey made by him and going 23 chains 16 links South and thence East across Section 43, the plaintiff, W. L. Travis would have 140 acres. He further testified that the old fence which at one time had been between the property of plaintiff and the two defendants was pretty close to the boundary line which he found and that he did see markings on old trees which he presumed to have been made by Lee, the Surveyor, who supposedly made a survey of the property in 1927 or 1928. The Trial Court in finding for the defendants in his reasons for judgment stated that he was *859 recognizing the line as fixed by Angus B. Lee and refixed by Mr. Hollister, which said line was set at 57.90 chains North of the South line of Headright 43, T-l-S, R-6-E, and on which the fence of W. L. Travis was and had existed since 1927. However, we do not agree with the Trial Judge in this respect as the testimony shows that the fence was not exactly on this line, and, in fact, the fence has since then been removed. Furthermore, Mr. Hollister testified that he did not definitely establish the Northwest corner of plaintiff’s property. Mr. Hollister, on cross-examination, testified in part, as follows:
“Q. Then in surveying down to 23.16 chains you came even with the far east end, within about 12 feet of what Mr. Travis had pointed out to you as being the old line? A. Right.
“Q. How did you arrive at that figure? That 23.16 chains to go South? A. Going by the Township map. I used that to establish the width at that point of Section 43, then went far enough south to get 140 acres.
“Q. Then you attempted to stay at the north edge" and come far enough south to give Mr. Travis exactly 140 acres? A. I was more or less just doing what they asked me to do, I don’t know anything about those old corners, hadn’t been there before.
“Q. In making that designation and coming south that far you found it corresponded with the variations, your measurements showed with the two old line marks? A. There could have been some little difference in the declamation of my comparison, but it wouldn’t have been that much difference.
“Q. What would you have said about the approximate age of that old fence? A. About 20 years.
“Q. About the same age as the blazes on the trees you found? A. Something like that. You couldn’t tell exactly but within a reasonable number of years, three or four. I believe about the same age.”
* * * * * *
“Q. I believe you stated in here in writing on this map that the point from which you measured was not any established point, but was one that was claimed to be an old corner? A. It was only from witnesses.
“Q. That was strictly hearsay? A. That was by witnesses.
“Q. Witnesses of what? A. They said it was.
“Q. Did they state that there were there at the time it was established or how many years ago it was? A. Mr. McNabb said-
“Q. How long before was it established. A. The same corner established by Mr. Lee when he surveyed it.
“Q. You didn’t refer to the boundary agreement. A. No, sir, just that we used it to come out. I cut off 140 acres from that to start.
“Q. Do you have the section lines on here, on your map? A. On the east side I have them about right, I think it is.
“Q. About right? A. Let me see it again. It is right on the east side, I didn’t try to establish the west boundary.
“Q. How did you arrive at 140 acres? A. By Township Map.
“Q. According to your survey does the south line of Mr. W. L. Travis and the north line of C. Arland Bridges and J. W. Travis combined go all the way across Section 43? A. I think they do.
“Q. Then if Mr. Travis’ fence doesn’t go all the way across Section 43 he does not have all of his record property under fence? A. No, it doesn’t go all the way to the west line, I am sure of that. 24-feet it is from where we came out. There *860 was an old blaze line there coming south, marked with blazes.”
* * * ❖ # *
“Q. You stated that you had no way of verifying this corner, that you have marked “A”, and in other words you didn’t find any trace of anything, this is something somebody told you — that it was an old line? A. Yes.
“Q. And if you measured down 140 acres and if this was wrong then this is wrong, down here there is no way for you to know if this is right? A. I checked to see if that was an old line down here.
“Q. If there was any marking here, you say there was an old stake there and you don’t know how it was established? A. Yes.
“Q. And if that is not correct your line down here would be wrong? A. If that was the old boundary between Bridges and Travis when the survey was made, then that is what we are trying to find out as there would be 140 acres down in there between the fences.
“Q. You acknowledge that, and it is possible they could have — that somebody could have moved that stake so there would be 140 acres in there? A. Yes, sir.”
We do not believe that this survey made by Mr. Hollister is conclusive, and, accordingly, do not agree with the trial Judge in his adoption of this survey as fixing the boundary between plaintiff’s property and the defendants’ property. Mr. Hollister, as will be shown from his quoted testimony, testified that he was just more or less doing what they asked him to do and that he did not know anything about the old corners. We think it more in accord with law and justice to remand the case for another survey as was done in the case of Smith v. Almond, 157 La. 265, 102 So. 330. In remanding this case for another survey, the surveyor appointed by the Court should find either the Northeast or the Northwest corner of plaintiff, W. L. Travis’ property and then run South a sufficient distance to enclose an area of 140 acres of land.
For the reasons assigned, it is ordered,, adjudged and decreed that the Judgment of the District Court be annulled and set aside and that this case be remanded to' the Trial Court for another survey to start from either the Northeast or Northwest corner of plaintiff, W. Travis’, property and to run South a sufficient distance to‘ enclose an area of 140 acres of land. The' costs of this court to be born equally by plaintiff and defendants and those of the Trial Court to await the final disposition of this case.
Remanded.