53 So.2d 285 (1951)
TATE
v.
CUTRER et al.
No. 3427.
Court of Appeal of Louisiana, First Circuit.
June 29, 1951.
*286 Reid & Reid, Hammond, for appellant.
Ponder & Ponder, Amite, Alfred W. Spiller, Jr., Hammond, for appellee.
ELLIS, Judge.
This is a boundary suit in which the plaintiff alleges that he is the owner of 106 acres of land, more or less, partly bounded on the west and south by certain pieces of property owned by the defendant, Robert B. Cutrer, Mrs. Martha Ryals Cutrer, and I. M. McGehee, Jr. and that the boundary line between these contiguous estates has never been determined and established. C. M. Moore, a surveyor, was appointed and sworn to make the survey.
A general denial was filed by the defendants and, in addition, they set forth "that there has been in existence for a period of more than thirty years a certain fence separating the contiguous estates of plaintiff and your appearers, said fence having been placed with the knowledge and consent of plaintiff herein." They further answered that they, together with their authors in title, have enjoyed the peaceable and uninterrupted possession of their several estates in accordance with their respective titles and in accordance with the boundary as established by the said fence for a period of more than 30 years. They further set forth that the boundary line between the estates had been determined and established with the consent and knowledge of the plaintiff and along the above referred to fence line as shown by a previous survey of July 1947 which is annexed to the answer, and also plead prescription of ten years.
The case was duly tried and the District Court, with oral reasons dictated into the record, in effect held that the contiguous properties of the plaintiff and defendants had been separated by a fence for more than 30 years and that the defendants had possessed to this fence for more than 30 years prior to the filing of the suit, and, therefore, rendered judgment recognizing the fence as shown by the appointed surveyor as the boundary line between the properties of the defendant I. M. McGehee, Jr. on the north, and Mrs. Martha Ryals Cutrer to the south of I. M. McGehee, Jr. and the other property of I. M. McGehee, Jr. to the south of Mrs. Cutrer to an old road where the old fence stopped, and then fixed the balance of the boundary as shown by the surveyors map.
From this judgment the plaintiff has appealed.
The record shows that the plaintiff acquired his property by a completely erroneous description as to acreage and location on the 11th day of January, 1905. In this deed, the property is described as 80 acres, more or less, being the W/2 of the SE/4 of Section 8 T 1 S R 8 E, and bounded North by J. E. Stewart, east by S. S. McElveen, south by Anthony Brumfield, and west by E. P. McGehee, and it was agreed that vendee's lands should go to the Wilson public road on the north.
On May 5, 1948 the survey was made by C. M. Moore, the same surveyor who was appointed by the court in this matter, and, as a result of this survey, the plaintiff obtained a corrected deed giving him 106 acres in the E/2 of W/2 of Section 8 T 1 S R 8 E, and more particularly described in accordance with Moore's survey. This corrected deed was signed by the various *287 heirs of the vendor of the plaintiff over a period from December 1948 to January 1949. The present suit was then filed on May 31, 1949.
The property of the defendants, Robert B. Cutrer, and his wife, Mrs. Martha Ryals Cutrer, who is really the owner of the property which was acquired by her prior husband, Joel J. Ryals, from Floyd M. McGehee on the 15th day of Nov. 1926, and is described as 40 acres, more or less, in Section  T 1 S R  E in the Second Ward and bounded on the north by wire fence running east and west (conditional line) and I. M. McGehee, East by Obadiah N. Tate, south and west by H. E. McGehee, Morris Public Road and I. M. McGehee, and being the same property acquired by Joe E. Stewart by purchase from I. M. McGehee.
The Tycer survey, which was excluded as an offering in evidence and which is annexed to the plaintiff's petition, shows that Mrs. Cutrer would obtain 42.30 acres if the boundary is fixed at the old fence line. There are three pieces of property which bound the property of plaintiff on the west and south, on the north is a piece of property belonging to I. M. McGehee, Jr., to the south of this is the property of Mrs. Cutrer, and to the south of Mrs. Cutrer is another piece of property belonging to the same I. M. McGehee, Jr. The testimony shows that there is a wire fence dividing the property of Mrs. Cutrer from that of I. M. McGehee, Jr. on the north. This fence runs east and west and is referred to in the title as a conditional line. We are not concerned with this fence or line. The title shows that Mrs. Cutrer is bounded on the east by plaintiff, Obadiah N. Tate. This is the line in dispute.
The property of I. M. McGehee, Jr. was acquired by Ivy M. McGehee from R. M. Addison and was a part of 220 acres as shown by deed in the record. The judgment in the succession of Ivy McGehee and his wife, Lucille Dykes McGehee, placing the heirs in possession described the property as follows: "Ninety two (92) acres of land more or less, described as sixty seven (67) acres bounded north by Joe Stewart, East by Stewart and Tate; South by Ryles; West by McGehee and Dykes, and Twenty-five (25) acres bounded north by J. J. Ryles, East by Tate, South by Preston School and West by Primes, located in the Parish of Tangipahoa, La."
In this deed we see the property bounded on the east by Stewart and Tate, plaintiff herein, and on the south by Ryles (Ryals), one of the defendants herein, and the 25 acres which is separated from the 67 acres by the property of the defendant, Mrs. Martha Ryals Cutrer, as being bounded on the east by Tate, present plaintiff.
Thus, we see up to this time in none of the deeds is any reference made to any fence running north and south as being a boundary between the plaintiff and the defendants, and it is clear from the surveys of Tycer and Moore that the old fence shown on the map is to the east of the actual boundary line between the plaintiff and defendants. There is no doubt but that the land in dispute between the actual boundary according to the descriptions and survey and the old fence line, which defendants contend is the boundary line, is outside the limits of the defendant's property as given in their titles. In other words, this disputed property is not included by description in the defendant's property. It is included in the description given in the corrected title of the plaintiff executed in December 1948 to January 1949.
In November 1947 the heirs of Ivy M. and Lucille Dykes McGehee sold to Ivy M. McGehee, Jr. (defendant) by surveyor's description the two pieces of property previously described in the judgment placing them in possession in the succession of Ivy and Lucille Dykes McGehee. This description is in accordance with the survey made by Tycer in July 1947 and the map which he made at the time is annexed to defendants' answer. The surveys by Tycer and Moore, who was appointed by the Court, are practically the same, the only difference being that Tycer accepted and fixed the old fence as the boundary line between the plaintiff's and defendants' properties. He explains this in his testimony as follows:
*288 "A. I ran the line as Mr. Moore ran it. First I ran it giving the east and west half sections for Mr. McGehee. I don't recall just what one had quite a tract of land some years ago and kept selling off to different parties and I found that the line was running through those fields and that the fields had been in use for a good many years and I made inquiry as to how long they had been there, and
"Q. I don't want you to tell me about any conversation with anyone except Mr. Tate."
This clearly shows that Tycer realized that the Moore survey is correct but that when the line ran through cultivated fields he inquired and found out how long the fields had been there and also the fence, and he decided that legally the fence was the boundary line and therefore, used it as such in his survey, and when the property was transferred to the present defendant, I. M. McGehee, Jr., the fence was actually described as the east boundary line between the plaintiff and the defendant.
We, therefore, have a case where the property in dispute is outside the title limits of the defendants but within the title limits of the plaintiff. There was no prior survey in accordance with Article 833 of the Civil Code, therefore, the prescription of 10 years must be overruled.
The only question left is whether the fence which the defendants claim is the boundary has been in existence for more than 30 years prior to the filing of this suit and whether the defendants and/or their authors in title possessed the land up to the fence for 30 years.
Article 852 of the Civil Code which deals with the 30 years prescription applies only to boundary suits and in such the possession of the present owner and his authors in title may be added for the purpose of sustaining 30 years prescription under this article. This is not true in a petitory action unless there is privity of contract, that is, unless the property in dispute is included in the description in one's title.
In the case of Henly v. Kask, reported in La.App., 11 So.2d 230, 233, the Orleans Court of Appeal, with Judge Janvier as its organ, reviewed the jurisprudence as it affects a plea of 30 years prescription to a boundary suit under Article 852 of the Revised Civil Code. In that case the Court found that as an established fact a visible boundary had been in existence for more than 30 years when the suit was filed, but that the defendant himself had not occupied the property all of that time and "therefore if his plea of prescription is to prevail it must be upon the legal ground that he could `tack' to his own possession that of its predecessors in title and this plaintiffs assert he may not do."
In discussing the question, the Orleans Court of Appeal cited the prior jurisprudence which agreed with the plaintiff's contention, viz. the case of Vicksburg, S. & P. Railway Co. v. Le Rosen, 52 La.Ann. 192, 26 So. 854, which, as pointed out by the Orleans Court, was overruled by our Supreme Court in the case of Opdenwyer v. Brown, 155 La. 617, 99 So. 482, 485, and the Court quoted the language of the Supreme Court in the latter case in overruling the Le Rosen case as follows: "We have examined the case of (Vicksburg, S. & P.) Ry. Co. v. Le Rosen, 52 La.Ann. 192, 26 So. 854, and there is no doubt that it holds views opposed to those herein above stated. But that case stands alone, and since we cannot accept it as sound in law, we must perforce overrule it. Under that decision no boundary could ever be fixed permanently; and if perchance it should be discovered that Bienville had misread the plan of his engineer and located his `place d' armes' a few hundred feet higher up, or lower down, the Mississippi than such plan calls for, there is no title to a foot of land in the city of New Orleans, which would not call for correction; and since the land which each successive purchaser took possession of would not be the same land which his title called for, it follows (if we accept the Le Rosen Case) that he could not `tack' onto his own possession that of his supposed author, and thus could not protect his boundaries, by *289 the prescription of 30 years. That would be against all common sense; and law is common sense, as far as legislators, courts, and men of law will let it remain so."
The Orleans Court of Appeal further stated:
"And that it may be quite clear that under such facts as we have here, it was the opinion of our Supreme Court, as expressed in the Opdenwyer case, that the possession of the ancestor in title may be `tacked' on where the prescription of thirty years is pleaded in an action in boundary and there has been a visible, physical boundary beyond the title limits. We quote the following from that opinion.
"`Let us then take a case of boundaries. Say that A buys a tract of land bounded on the north by the line X, and that C acquired the adjoining tract bounded on the south by the same line X. The former then builds his fence or wall N feet north of the line X; that is to say, on the land of C. After 25 years have elapsed, A sells to B his tract of land, describing it as bounded on the north by the lands of C, and B goes into possession of the whole tract up to the fence or wall aforesaid. Five years after that, being 30 years after the fence or wall was set up, C brings an action to fix the boundary between his property and that of B. And this is what R.C.C. art. 852 says:
"`Art. 852. Whether the titles, exhibited by the parties, whose lands are to be limited, consist of primitive concessions or other acts by which property may be transferred, if it be proved that the person whose title is of the latest date, or those under whom he holds, have enjoyed, in good or bad faith, uninterrupted possession during thirty years, of any quantity of land beyond that mentioned in HIS title he will be permitted to retain it, and his neighbor, though he have a more ancient title, will only have a right to the excess; for if one cannot prescribe against his own title, he can prescribe beyond his title or for more than it calls for, provided it be by 30 years possession.'
"It will be observed that in such a case the holder of the junior title may retain any quantity of land `beyond his title' which he or those under whom he holds may have possessed for 30 years."

* * * * * *
"It seems clear to us, as a result of these decisions, that the now well-established rule is that where there is a visible boundary, which has been in existence for thirty years or more, and the defendant in a boundary action, or his predecessors in title have, in addition to the land described in the title, actually possessed land extending to that visible boundary, a plea of prescription of thirty years will be sustained, since the defendant may show that, though he, himself, has not occupied the property for thirty years, the occupancy of his predecessors in title may be `tacked' to his own. It is true that, in order that this rule apply, certain conditions must be met. First, there must be a visible boundary, such as a fence or wall, and second, there must be actual possession, either in person or through ancestors in title, for thirty years or more, of the land described in the title and also of that beyond the title as far as the actual physical boundary. Those conditions are met here."
Also see Crow v. Braley, La.App., 47 So. 2d 357.
It therefore remains to be decided whether this fence was in existence for more than 30 years prior to the date of the filing of the suit and whether these defendants and/or their authors in title had open, notorious and actual possession of the property in dispute up to the fence. The District Judge found this to be a fact. The preponderance of the testimony is to the effect that this fence has been in existence for more than 30 years. There is some testimony as to a dispute at one time about this line between the plaintiff and the then owners of the property of the present defendants, and as a result the plaintiff moved his fence back some eight feet from the original old fence, leaving a lane between his property and that now claimed by the defendant. It is also clear that this land has been cultivated and has been in actual possession of the defendants and their authors in title up to the fence line shown on Moore's and Tycer's surveys for more than 30 years. It is true *290 that this fence extends only on the south to a road known as the Morris Road, but it is also true that the fence then turns and runs along the Morris Road. The mere fact that it does not extend across the Morris Road so as to go the full length of the property of I. M. McGehee, Jr. would only have the effect of discontinuing the boundary established by the fence, and the correct boundary as to the remainder of the property would, therefore, be as shown on Moore's survey and as established by the district court in its judgment.
During the years from 1905 up until Moore's survey in May 1948 the plaintiff saw this disputed strip being possessed by others, the fence being erected and kept in repair by himself and the contiguous land owners, and at no time claimed the disputed property. There is strong testimony, which plaintiff denies, to the effect that he himself pointed out the line where the old fence was erected as the boundary line and at other times agreed that that was the line.
The finding of the district court that this fence had been erected for more than 30 years and the property possessed by the present defendants and their authors in title up to this fence during the entire time was correct and the judgment of the lower court is affirmed.