JANVIER, Judge.
This is an action in boundary. The plaintiffs, Mr. and Mrs. Warren J. Vick-nair, own Lot Seven in Square Six of the Village of Mechanickham, which is now a part of the City of Gretna, Louisiana. The defendant, Robert J. Langridge, owns Lot Six in this square. Both lots front on Lavoisier Street. The plaintiffs alleged that it is necessary to establish this boundary line between their lot and that of the defendant, and they prayed that a surveyor be appointed to survey the properties and to establish the boundary line between them.
Defendant answered, denying that there is any necessity for the establishment of a boundary line between the two properties, and especially averred that there had existed for more than thirty years a fence between the said properties, and that he and his ancestors in title had been “in continuous, uninterrupted, peaceable, public, open, physical and unequivocal possession as owners for a period in excess of thirty (30) years of the whole of said lot Six (6) and that portion of said lot No. Seven (7) located on the Second Street side of said fence and walkway * *
A surveyor was appointed and a survey made and the process verbal and a copy of that survey appear in the record. From this survey it appears and, in fact, it is admitted 'by defendant that the line between the two properties, as said line now exists, is not that which, according to the two titles should be the dividing line, defendant conceding that at the front of the properties on Lavoisier Street his property encroaches upon the property of plaintiffs 8%oo of a foot and in the rear Wio feet but he maintains that he has acquired the said strip as a result of the prescription of thirty years.
In the lower court there was judgment in favor of plaintiffs establishing the boundary in accordance with the written titles and decreeing that “plaintiffs have the right to remove to the boundary line, as herein fixed, the fence now encroaching upon their property * * From this judgment defendant has appealed.
Defendant relies upon Articles 852, 3493-95, 3503 of our Civil Code. Article 852 reads as follows: “Whether the titles, exhibited by the parties, whose lands are to be limited, consist of primitive concessions or other acts by which property may be transferred, if it be proved that the person whose title is of the latest date, or those under whom he holds, have enjoyed, in good or bad faith, uninterrupted possession during thirty years, of any quantity of land beyond that mentioned in his title, he will be permitted to retain it, and his ■neighbor, though he have a more ancient title, will only have a right to the excess; for if one can not prescribe against his *715 own title, he can prescribe, beyond his title or for more than it calls for, provided it be by thirty years possession.”
Article 3503 it will be noted provides that “in the prescription of thirty years, which is acquired without title, it extends only to that which has been actually possessed by the person pleading it.” However, it will be further noted that Article 3493 provides for the “tacking” on to the possession of the person who claims by prescription the possession of his author in title. That article reads as follows: “The possessor is allowed to make the sum of possession necessary to prescribe, by adding to his own possession that of his author, in whatever manner he may have succeeded him, whether :by an universal or particular, a lucrative or an onerous title.” And Article 3495 provides that if the possession of the author in title is to be “tacked” on “the different possessions must have succeeded each other without interval or interruption.”
For many years these, articles furnished ground for litigation. However, in Opdenwyer v. Brown, 155 La. 617, 99 So. 482, the Supreme Court held that the possession of an ancestor in title could be tacked on for the purpose of supporting a claim of prescription of thirty years provided the property which was claimed “beyond” the title was marked by an existing visible boundary.
In Henly v. Kask, La.App., 11 So.2d 230, 235, this court considered this question, discussing various cases in which it had been previously considered and said: “It seems clear to us, as a result of these decisions, that the now well-established rule is that where there is a visible boundary, which has been in existence for thirty years or more, and the defendant in a boundary action, or his predecessors in title have, in addition to the land described in the title, actually possessed land extending to that visible boundary, a plea of prescription of thirty years will be sustained, since the defendant may show that, though he, himself, has not occupied the property for thirty years, the occupancy of his predecessors in title may be ‘tacked’ to his own. It is true that, in order that this rule apply, certain conditions must be met. First, there must be a visible boundary, such as a fence or wall, and second, there must be actual possession, either in person or through ancestors in title, for thirty years or more, of the land described in the title and also of that beyond the title as far as the actual physical boundary.”
The question then presented is one of fact, — whether the little strip of land beyond the title boundary of defendant was possessed by him or by his ancestors in title without interruption for more than thirty years, and whether during such continuous period of thirty years that additional strip, which is not included within his legal title, was contained within “an existing visible boundary.”
The evidence establishes beyond any possible doubt that for some time there was between the two properties a fence which, for at least a distance of 103 feet from the front line of the properties, was not on the correct title boundary but was on the line which encroaches upon the property of plaintiffs. And the evidence further shows beyond any doubt that that fence also extended to the rear line of the properties, though there is some dispute as to whether beyond the point, already mentioned as being 103 feet from the front line of the properties, it continued in a straight line to the rear, defendant contending that it did and plaintiffs maintaining that it did not, and that from that point it extended to the front of a shed which was at the rear of defendant’s property, and that where it connected with the shed it did not encroach upon plaintiff’s property.
The record shows also that in 1938 the fence was removed for a distance extending from the front line of the properties 103 feet towards the rear, but that there remained the markings of the holes of the posts which had supported the fence and that there was also clearly marked in concrete the line on which the base of the fence had been located.
It is the contention of defendant that this fence was erected in 1906 or early in 1907, and remained until 1938, and that during that period of more than thirty years it constituted a visible boundary.
*716 There is no dispute that during that period the property of the defendant was in the possession either of defendant or his ancestors in title without interruption, and it necessarily follows that if that fence was erected in 1906, or 1907, and remained until 1938, the title to that little strip of land, which was included within the fence but which was not included in the title of the defendant, was acquired by prescription as a result of the codal articles already cited.
The defendant’s testimony is that the fence was 'built when the property was purchased by one of his ancestors in title, David Schwartz.
No good purpose would be served by a discussion of the rather lengthy testimony concerning the question of whether the fence was erected in 1906 or early in 1907, as contended by the defendant, or a few years later, as is asserted by the plaintiffs. Defendant himself testified that he was familiar with the property at the time the fence was erected; that the property was purchased by David Schwartz, and that when Schwartz purchased it, he built the house which is presently on that property and also built the fence. Defendant said that this was “The end of Nineteen hundred six (1906) or beginning of Nineteen hundred seven (1907).”
The record shows that David Schwartz purchased the property on July 21, 1906. After a consideration of all of this testimony, we reach the conclusion that the fence was erected not later than during the early part of 1907, and that consequently the little strip of property which is in dispute was included within the’ fence on defendant’s side for more than thirty years, and that, as a result, he has acquired the right to retain it because of the provisions of the codal articles which we have quoted.
Our conclusion is considerably influenced by a consideration of a survey' made by Alvin E. Hotard, Civil Engineer, on December 30, 1943, a copy of which is in the record and which shows that the division line between the properties as it existed at the time of the survey encroached upon the title of the plaintiffs at the front of the properties on Lavoisier Street by one foot and at the rear of the property by two and one-tenth feet.
If the fence was not erected in 1906 or 1907, but was erected some time later as contended by plaintiffs, there -would still be presented the question of whether or not, after the front portion of the fence was removed in 1938, there yet remained “an existing visible boundary” evidenced by the post holes which are still evident and the mark of the fence which, according to the record, still exists in the concrete on the ground.
We do not find it necessary to pass on this rather interesting question of whether these marks should be construed as an existing visible boundary, because we feel that the evidence shows that the fence was in existence for more than thirty years and that, as a result, the right to retain the strip of land in controversy was acquired.
From the point 103 feet from the front line to the rear fence, a fence is still in existence except that, at the front of the shed which is on the rear line of defendant’s property, there is a right angle connection between the fence and the front of the shed. It is conceded that this is not the original fence, and the plaintiffs contend that when it was reconstructed some time ago, it was not put back on the proper line on which it had always existed but was rebuilt on the line on which it now stands and that as a result the encroachment upon their property did not come into existence until this fence dividing -the rear parts of the two properties was reconstructed on the'wrong line only a few years ago.
We find it difficult to accept the contentions of the plaintiffs on this point. If their contention is correct, then the fence from the front of the property to the rear as it was originally constructed was not in a straight line and there was an angle in that fence at the point 103 feet from the front line; All of the surveys which are in existence show this fence and no -one of them shows any such angle. No reason is *717 given for the construction of such a fence with an angle in it 103 feet from the front of the properties and none of the titles call for any such irregular line.
Our conclusion is that the fence extended from the front line of the property to the rear in a straight line and that it existed for more than thirty years and that the title to the entire strip from the front to the rear has been acquired by the defendant as a result of the prescription of thirty years.
The judgment appealed from is annulled, avoided and reversed, and it is now ordered, adjudged and decreed that Robert J. Langridge is the owner of that portion of Lot 7 of Square 6 located on the Second Street side of the fence delineated upon the plan of H. E. Landry, Sr., Civil Engineer, surveyor, dated November 8th, 1948, being that portion of Lot 7 adjoining Lot 6, measuring s?!oo feet front on La-voiser .Street and 194o feet in the rear, and extending from the' front to the rear of said Lot 7, and that the boundary line between the property of plaintiffs and that of defendant be fixed accordingly; the parties to pay their respective costs, and the cost of survey to be divided equally between them.
Reversed.