71 So.2d 689 (1954)
SATTLER
v.
PELLICHINO.
No. 3812.
Court of Appeal of Louisiana, First Circuit.
March 22, 1954.
Rehearing Denied April 26, 1954.
*690 Henry A. Mentz, Jr., Hammond, for appellant.
W. S. Rownd, Reid & Reid, Hammond, for appellee.
ELLIS, Judge.
Plaintiff filed a suit which as a result of a motion to elect and a supplemental petition, became a petitory action. While the defendant filed a general denial he also plead the prescription of 30 years under Articles 3499 and 852 of the LSA-Civil Code. The issues were narrowed down to the pleas of prescription, both of which were sustained by the judgment of the District Court, resulting in the dismissal of plaintiff's suit from which he has appealed.
The defendant purchased in July 1944 ten acres of land which lies to the west of and contiguous to the 10 acres purchased by the plaintiff in April, 1951 and it is conceded by counsel on both sides that the sole question in dispute is the common boundary between the two pieces of property.
The property in dispute measured approximately 70 feet by 36 feet, the entire length of the ten acres, and, it is conceded, lies wholly within the title bounds of plaintiff and therefore beyond the title limits of the defendant.
In approximately 1912 the property described in the defendant's deed was purchased by one Byers who built a house and a barn within the bounds of the disputed strip, and also a fence along the alleged east line of the disputed strip. Byers cultivated *691 a portion of the disputed strip as well as some of the land included within the limits of his title, all of which is shown by evidences of old rows, although the testimony further reveals that in 1952 on the date of the trial the trees and timber on the property were 30 years old or older. In 1919 the father of the defendant purchased the property described in defendant's deed and it is shown that he at least planted one crop of cotton on the land, cultivating approximately 2/3 of the disputed strip and leaving a wide turn row or space between the fence and the end of the cultivated portion. It is further shown that the entire property was fenced as it had been under Byers. It is shown that the fence along the disputed line was constructed of barbed wire but as to how many strands, the proof is indefinite. It is also shown that a new fence was constructed by the defendant after the survey and purchase by the plaintiff, and all of defendant's witnesses testified that the new fence was on the exact line of the old fence, and it strikes us that some of them must have had awfully good memories as they had been away from the property from 30 to 40 years, and the new fence is described as very irregular and erratic and running from tree to tree "like a snake".
The defendant's family lived in the house, according to defendant's older brother, about four or five years, when the house and the barn burned and they moved off of the property. This brother estimated that they had left the property about 30 years ago which would fix the time as approximately 1922. Most of the testimony on this point is indefinite, and to illustrate the defendant describes himself as being approximately two years of age when he first remembered the farming of this property and at the time of the trial he was 39. If he was referring to the cotton crop raised after his father purchased it in 1919 he was of course, approximately six years old.
After the Pellichino family moved nothing was done in the way of maintenance to the fence and it rotted down, and it was shown on the date of the trial in 1952 by the testimony of counsel for plaintiff as a result of an inspection made by the trial judge along with counsel for plaintiff and defendants that there was found in the northeast corner of the Pellichino fence a tree about 30 years old with three strands of very old barbed wire imbedded within the tree, and following this fence in a southerly direction was found three more trees of an estimated 40 years of age, which had remains of barbed wire imbedded in them, and four trees with evidence of an old blaze mark. In other words, upon close inspection four trees were found with old barbed wire imbedded very deeply in them. As to the blazes, the only evidence of any survey is one made by C. M. Moore subdividing lands belonging to the Cate Estate, which sold the 10 acres to the plaintiff. The blazes found were not made by Moore as his line is 70 to 36 feet further east. Moore testified that in 1923 he subdivided the Cate lands in this area into five acre lots and also laid off roads or streets and at that time he doesn't remember any fence and if he had he would very likely have reported it to his employer. He again surveyed the property for the plaintiff in May 1951, and after the survey and purchase by the plaintiff the defendants came in and built a new fence as described. According to Moore's testimony, he did not place any fence on the plat of his survey of 1951 as the new fence had not been then constructed and he did not notice any encroachments or overlapping of any fence. After the boundary dispute arose and the new fence was built by the defendant, Moore returned to the property and made a close examination and found some barbed wire imbedded in two pine trees along the 660 foot boundary line and also a barbed wire imbedded in an oak tree which was out of line and not on the new fence. He also found the old signs of cultivation which extended 2/3 of the way within the disputed area and he estimated that the cultivation had taken place 20 or 30 years previous.
The plaintiff in 1945 inspected this property with a view to purchasing and at that time saw one pine tree with a piece of barbed wire imbedded in it. He described this piece of wire as being approximately *692 two feet in length. While some of defendant's witnesses as well as the defendant himself gave testimony that there was as many as 30 or 40 trees with five strands of barbed wire hanging out of them, there is no doubt but that it is definitely shown that there were only four trees scattered along the 660 foot line and that the most number of strands seen was three, evidence of a three wire fence, and on the date of the trial and on the dates upon which the witnesses inspected the property, the old wire was broken off close to the trees.
The defendants contend that after they moved from the property, while the fence was not maintained but allowed to rot, they and members of their family raked straw off of the disputed strip as the entire property out there was shown to have grown up in pine trees which, even in the cultivated area, were estimated to be 30 years old or older. On the other hand, it was shown that the Cate Estate sold the straw on the property purchased by the plaintiff, and while it is contended by counsel for defendant that the purchasers or those in charge of selling the straw recognized this old fence line by not raking any straw from across it, it appears that what these witnesses meant was that there was a fence on the north and on the south of the property purchased by the plaintiff and that they did not cross these lines, for they repeatedly testified that there was no fence separating plaintiff's and defendant's properties. It must be remembered also that these witnesses are rather difficult to understand and probably did not clearly understand themselves as they were of Italian descent and possibly understood their language better than English.
In 1939 an inspection of this property was made by Mr. J. M. Fourmy, a representative of the Cate Estate, and at that time there was no fence but he did see an indication "there in one of the trees."
Having reviewed the material facts, we will now consider the law and jurisprudence applicable to the prescription under Art. 852 of the LSA-Civil Code, which reads as follows:
"Whether the titles, exhibited by the parties, whose lands are to be limited, consist of primitive concessions or other acts by which property may be transferred, if it be proved that the person whose title is of the latest date, or those under whom he holds, have enjoyed, in good or bad faith, uninterrupted possession during thirty years, of any quantity of land beyond that mentioned in his title, he will be permitted to retain it, and his neighbor, though he have a more ancient title, will only have a right to the excess; for if one can not prescribe against his own title, he can prescribe beyond his title or for more than it calls for, provided it be by thirty years possession."
It will be noted that we have a case filed as a petitory action being defended under the prescription set forth in Article 852 pertaining to the fixing of boundaries, however, there is no reason why it should not be used as a defense to a petitory action. We find a pertinent and logical argument presented in the 13 Louisiana Law Review (Vol. 13, No. 4) at page 585, which is a discussion of prescription under Article 852:
"If one is faced with the defense of a petitory action, it would appear that a boundary action and Article 852 could be properly pleaded in a reconventional demand. Aside from ownership of the strip of land in dispute, titles of the respective parties are seldom at issue. In reality only the proper location of a boundary is at issue. Is not one element of plaintiff's cause of action in a petitory action the delimitation of the title sued upon? Regardless of the state of the remainder of his title, if plaintiff in a petitory action claims a boundary which includes land lost by the effect of prescription under Article 852, then plaintiff should not be permitted to regain the land by his form of action alone. Since the outcome of a boundary action would give the land to defendant, it is not logical to permit a plaintiff to escape such an outcome by *693 resort to the petitory action. It is submitted that even should such a petitory action be filed by one who was unsuccessful in a prior boundary action, an exception of no cause of action or a plea of res adjudicata should be sustained.
In conclusion it is submitted as follows:
"(1) Article 852 states a rule of prescription by which one may acquire ownership of land outside one's title description if the land has been possessed within visible bounds for a period in excess of thirty years; and,
"(2) Article 852 can be utilized in any action proper to determine ownership or the right to possession of such land."
The law applicable and the facts necessary to sustain the plea of 30 years prescription under Article 852 of the LSA-Civil Code is set forth in the following cases.
Henly v. Kask, La.App., 11 So.2d 230, 235, gives an exhaustive review of the jurisprudence on the question and sums up the requirements in the following language:
"It seems clear to us, as a result of these decisions, that the now well-established rule is that where there is a visible boundary, which has been in existence for thirty years or more, and the defendant in a boundary action, or his predecessors in title have, in addition to the land described in the title, actually possessed land extending to that visible boundary, a plea of prescription of thirty years will be sustained, since the defendant may show that, though he, himself, has not occupied the property for thirty years, the occupancy of his predecessors in title may be `tacked' to his own. It is true that, in order that this rule apply, certain conditions must be met. First, there must be a visible boundary, such as a fence or wall, and second, there must be actual possession, either in person or through ancestors in title, for thirty years or more, of the land described in the title and also of that beyond the title as far as the actual physicial boundary. Those conditions are met here."
Again in Vicknair v. Langridge, La.App., 57 So.2d 714, 715, it is stated:
"The question then presented is one of fact,whether the little strip of land beyond the title boundary of defendant was possessed by him or by his ancestors in title without interruption for more than thirty years, and whether during such continuous period of thirty years that additional strip, which is not included within his legal title, was contained within `an existing visible boundary.'

* * * * * *
"If the fence was not erected in 1906 or 1907, but was erected some time later as contended by plaintiffs, there would still be presented the question of whether or not, after the front portion of the fence was removed in 1938, there yet remained `an existing visible boundary' evidenced by the post holes which are still evident and the mark of the fence which, according to the record, still exists in the concrete on the ground.
"We do not find it necessary to pass on this rather interesting question of whether these marks should be construed as an existing visible boundary, because we feel that the evidence shows that the fence was in existence for more than thirty years and that, as a result, the right to retain the strip of land in controversy was acquired."
In Tate v. Cutrer, La.App., 53 So.2d 285, the basis of the decision sustaining a plea of prescription under Article 852 was by virtue of the fact that a fence had been erected and maintained for more than thirty years.
In Foscue v. Mitchell, 190 La. 758, 182 So. 740, 745, in an opinion by Justice Rogers of our Supreme Court, it was said:
"Nor can defendants maintain their claim of title under the prescription of *694 thirty years as provided by Article 852 of the Civil Code. The prescription referred to in the codal article is a boundary prescription. Opdenwyer v. Brown, 155 La. 617, 99 So. 482. That prescription is not applicable to this case, since the irregular fence which was erected from time to time on the South end of the seven acre tract was never intended to serve and never served as a boundary or dividing line between the property of Mr. Mitchell and the property of Mr. Foscue. Moreover, there is no definite proof in the record that the fence was maintained for thirty years." (Emphasis added.)
It is clear from the above jurisprudence that the defendant bore the burden of proving actual possession in himself and in his ancestors in title up to the fence erected in 1912, and also that this fence was maintained and constituted a visible boundary for more than 30 years. It is clear from the facts in this case that the fence, which evidently was a three strand irregular barbed wire fence nailed from tree to tree with some posts between, was standing and visible in 1919 and until the date the defendant's family moved away from the property which is not definitely shown but which might be estimated as anywhere from 1920 to 1922, and thereafter it was completely abandoned insofar as any maintenance was concerned and admittedly was allowed to "rot down." While it is not shown that this land was burned over as nearly all the land in Tangipahoa Parish at that time, there is also no evidence to show the gauge of the barbed wire nor the number of years such a fence might be expected to stand. It is clear that in 1939 and thereafter the only visible vestige remaining of this fence was some old strands deeply imbedded in four pine trees and broken off close to the tree along the entire 660 feet of this line.
The defendant has clearly failed to prove that this fence was maintained for a period of thirty years. Can it be said that the few remains found in 1952, which evidently existed to no greater extent in 1939, and even possibly in 1923, when Mr. Moore subdivided the property, constituted a visible boundary between the two estates?
Our Supreme Court in the recent case of Hill v. Richey, 221 La. 402, 59 So.2d 434, 440, in touching upon the meaning of "enclosures" stated:
"We are supported in this view by the interpretation given by this court in the case of Leader Realty Co. v. Taylor, 147 La. 256, 84 So. 648, 651, to the word `boundaries' as used in Article 3437 of the [LSA] Civil Code dealing with possession. That article provides: `It is not necessary, however, that a person wishing to take possession of an estate should pass over every part of it; it is sufficient if he enters on and occupies a part of the land, provided it be with the intention of possessing all that is included within the boundaries.' In that case this court said that `* * * The word "boundaries", in that article, means the limits or marks of inclosure if the possession be without title, or the boundaries or limits stated in the title deed if the possession be under a title. * * *' (Italics ours.)
"Further, Article 826 provides:
"`By boundary is understood, in general, every separation, natural or artificial, which marks the confines or line of division of two contiguous estates. Trees or hedges may be planted, ditches may be dug, walls or inclosures may be erected, to serve as boundaries.
"`But we most usually understand by boundaries, stones or pieces of wood inserted in the earth on the confines of the two estates.'
"What the court means by `enclosures', as that term is used in the numerous cases found in the jurisprudence, is that the land actually, physically, and corporeally possessed by one as owner must be established with certainty, whether by natural or by artificial marks; that is, that they must be sufficient to give definite notice to the public and all the world of the character *695 and extent of the possession, to identify fully the property possessed, and to fix with certainty the boundaries or limits thereof. To say that the term means `enclosed only by a fence or wall' would be giving it a very strict and narrow construction, not justified or supported by the articles of the Code, as we have hereinabove pointed out, and would lead to absurd consequences in some cases."
Under the facts in this case it cannot be said that the few remains of the original old fence built in 1912 seen on four diffierent trees over a distance of 660 feet and only after close inspection was sufficient "to give definite notice to the public and all the world of the character and extent of the possession, to identify fully the property possessed and to fix with certainty the boundary or limits thereof." The witnesses who testified that they had inspected this property, and had surveyed it, differed in the number of trees along the alleged fence line containing old wire imbedded within them from one to two pines and one oak, the latter not being on the line, and it was only after the closest inspection and examination by the trial judge and the attorneys that four trees were found along the line. One might go back and forth for years, unless he were particularly looking for evidence of an old fence, and never see these wires imbedded in these four pine trees which were broken off close to the tree. The defendant, having failed to offer the proof necessary to satisfy the requirements of the law, his plea of prescription of 30 years under Article 852 should have been and it is hereby overruled.
The next question for decision is the plea of 30 years prescription under Article 3499 of the LSA-C.C., which reads:
"The ownership of immovables is prescribed for by thirty years without any need of title or possession in good faith."
It is well settled that in an action of boundary or a plea of prescription, based upon Article 852 of the LSA-C.C., where the property in dispute is beyond the title limits of the defendant, one can tack his possession to that of his ancestors in title in order to satisfy the 30 year period. See Opdenwyer v. Brown, 155 La. 617, 99 So. 482; Henly v. Kask, La.App., 11 So.2d 230; Tate v. Cutrer, La.App., 53 So.2d 285; Vicknair v. Langridge, La.App., 57 So.2d 714.
It is equally well settled that a plea of 30 years prescription under Article 3499 of the LSA-C.C., one can tack his possession to that of his ancestors in title only when there was a privity between the two. In the case of Ford v. Ford, La.App., 34 So.2d 301, 303, decided by this Court, with Judge, now Justice LeBlanc, as its organ, in which the defendants had acquired the property in dispute from their father, it was stated:
"The principal contention of counsel for plaintiff seems to be that the defendants cannot defend their thirty year plea of prescription which, it is maintained, is the only ground on which they could obtain title to the property, because in order to make up the entire period it is necessary for them to tack on to theirs and their father's possession, that of his author in title, Shay, and this, they say, they cannot do. Counsel cite certain authorities which did hold that the claimant under the thirty year plea could not add to his possession that of his vendor but that was because there was no privity of contract shown between him and his vendor with respect to the possession claimed. See particularly Sibley v. Pierson, 125 La. 478, 51 So. 502. In reviewing the law on this point the court, in Emmer v. Rector, 175 La. 82, 143 So. 11, referred to the case of Harang v. Golden Ranch Land & Drainage Co., 143 La. 982, 79 So. 768, 769 and stated that on rehearing it had approved the principle enunciated in Sibley v. Pierson to the effect that unless there was a privity between the possessor and his authors in title, the latter's possession could not be tacked *696 on that of the former to make the thirty year period, but that the court had `impliedly, if not expressly, approved the converse of the proposition; namely, that, where there was a privity of contract between the possessor and his vendor, the possession of the latter could be tacked on to the possession of the former to make out the statutory period.' (175 La. 82, 143 So. 14.) The court pointed out that in the Harang case it had also approved the definition of the word `privity' as used in this connection which is given in 1 R.C.L. at page 178 as follows: `Between Whom Privity Exists.Privity denotes merely a succession of relationship to the same thing, whether created by deed or by other act, or by operation of law. If one, by agreement, surrenders his possession to another, and the acts of the parties are such that the two possessions actually connect, the latter commencing at or before the time the former ends, leaving no interval for the constructive possession of the true owner to intervene, such two possessions are blended into one, and the limitation period upon the right of such owner to reclaim the land is thereby continued; indeed, the purpose of a continuous possession is the continuous ouster of the owner.' See also 1 American Jurisprudence, p. 880."
In the present case Salvadore Pellichino, the defendant, traces his title from one Byers who sold the property to his father in 1919. As there was no privity between Byers and defendants' father, the latter could not add the former's possession to his own, and in the present case actual corporeal possession of the disputed strip must be dated from 1919, when it was acquired by defendants' father.
When the defendants' father died, he, together with his mother, the surviving spouse and his brothers and sisters, by operation of law, succeeded to all his father's property and rights, and if the father had exercised any corporeal or civil possession the widow and heirs could use it in order to make up the 30 years required. However, when the defendant purchased the interest of his mother and brothers and sisters in 1944 the disputed strip was not included within the limits or bounds of the description by which he acquired, and the defendant could not tack the possession of his brothers and sisters and his mother, if any they had, to his own. In McEvoy v. Porbes, 1 Orleans App. page 56, it is stated:
"Where the owner of an immovable property has held beyond his title for less than thirty years and has prior to expiration of that time conveyed his property in accord with and within the limits of his title deed, this constitutes an interruption of possession or abandonment of his material detention of the excess beyond his title."
Thus, on the date that the defendant purchased his mother's and co-heirs' interests, if their possession was all that he could claim, it would have ended there. However, it is to be remembered that he, as an heir, inherited upon his father's death an undivided one-twentieth interest in his succession.
In view of the conclusion which we have reached in applying well settled principles of law to the facts of this case it is not necessary that we further pursue the question of whether defendant's individual inheritance would satisfy the requirements of the law if he had continued to exercise either actual or civil possession.
In the case of Ranger Land Co., Inc. v. Story, La.App., 1 So.2d 410, 411, this Court, in dealing with the plea of 30 years prescription, under Articles 3499-3505 of the LSA-C.C., stated:
"Learned counsel for plaintiff assign as principal error in our opinion the holding that the defendant had taken corporeal possession of the land by fencing it some forty or fifty years ago, and that it was not necessary for him to show that the property remained continuously enclosed for thirty years in order for him to acquire ownership of the land by the prescription of thirty *697 years. We held that the enclosure of the land by having the lines run and a fence placed around it was such corporeal possession as is required by Article 3501 of the Civil Code, and this corporeal possession having thus begun, it was not necessary for the possessor to show that he kept the land under fence for thirty years, but, as this article of the Code clearly states, if that possession was not interrupted, he could and did preserve that possession by external and public signs, announcing his intention to preserve his possession, and these external and public signs were shown in the old wire and posts, remains of this fence, in his use of the land for pasturage, in cutting timber on the land, paying taxes on it, and in exercising the usual and customary acts of ownership over the land for more than thirty years, with no adverse claims by anyone.
"(1) Articles 3499-3505 of the Civil Code relate to the prescription of thirty years and we find nothing in them which requires possession of land by enclosure for thirty years to acquire ownership by this prescription. In fact, Article 3502 specifically states that a man may retain the civil possession of an estate, sufficient to prescribe, so long as there remains on it any vestiges of works erected by him; as for example, the ruins of a house."
In Hill v. Richey, 221 La. 402, 59 So.2d pages 434, 440, our Supreme Court stated:
"In discussing these articles it was said by the Court of Appeal, First Circuit, in the case of Ranger Land Co., Inc., v. Story, 200 So. 649, 1 So.2d 410, 411, that `* * * There is nothing said or implied in these articles that in order to possess, the land must be enclosed for the entire time, or for that matter, that it must be enclosed at all'".
In dealing with the question of sufficiency of "vestiges of works erected by the possessor" the Supreme Court, in the case of John T. Moore Planting Co., Ltd. v. Morgans La. & T. R. & S. S. Co., 126 La. page 840, 53 So. 22, 41, had the following to say:
"The freight depot is not of uniform width. Sixty-one feet of it, at the east end, is wider by 19 feet than the rest of the structure and of the platform at its west end. Fourteen feet back of the narrower part there is a row of four brick pillars. They are flush with the ground, if not actually partially covered. The only explanation that can be given of their presence is that they are the remains of an open platform which the railroad had along there before the war for storing freight, and which was burnt in 1862. Defendant relies upon these pillars as evidence of continuous, open possession, and invokes article 3502, Civ.Code, reading as follows:
"`Art. 3502. A man may even retain the civil possession of an estate, sufficient to prescribe, so long as there remain on it any vestiges of works erected by him, as, for example, the ruins of a house.'
"These remnants of pillars were barely noticeable, and in all likelihood were never noticed by any one before the arising of the present litigation; and consequently they could hardly be held to constitute the vestiges of a building, such as article 3502 has reference to. The vestiges in question, to serve the purpose, must be of a character to challenge attention, `As, for example,' says the article, `the ruins of a house.'"
Under the proven facts in the present case the only vestiges which remained on the property as far back as 1939 were signs of cultivation evidenced by old rows, upon which pine trees 30 years of age were standing on the date of the trial. These old rows extended into the disputed strip of land approximately one-third of its width. The only other vestiges left on the property were a few strands of old barbed wire *698 broken off close to four trees. There is no testimony that there were any remains of the old house to be seen, or the barn, both of which burned between 1920 and 1922, at which time the entire Pellichino family moved away from the property and apparently abandoned it. The vestiges described could not be considered of such a character as to "challenge attention." The only acts which the defendant testified he and the other members of his family committed which might tend to show civil possession was the raking of straw. No dates or years are given, and witnesses who raked straw for the adjoining owner, the Cate Estate, do not testify to ever having seen the defendant or any other members of his family rake any straw from the property described in their title, or from the disputed strip.
While the facts clearly show that the defendants' father had the actual, physical and corporeal possession of the property in dispute, the testimony fails to prove that it was preserved by any external or public signs showing the defendants' intention to preserve the possession of the disputed strip, and even though we should concede the raking of straw, which is definitely not proven to have been regularly done each year, then such civil possession would not be sufficient in view of the fact that there were no remains on the property of any vestiges of works within the meaning of Article 3502 of the LSA-C.C. as interpreted in the Moore case, supra. As a matter of fact when the house and barn burned and the Pellichino family moved away from the property the facts reveal an intention to abandon any actual or civil possession of the disputed strip of land.
For the above reasons the plea of prescription based upon Article 3499 of the LSA-C.C. is hereby overruled and the judgment of the District Court is hereby reversed.
Judgment is hereby awarded in favor of the plaintiff, W. R. Sattler, Jr., and against the defendants, Salvadore Pellichino and Sam Pellichino, recognizing the plaintiff as the true and lawful owner of the South half of the Northwest quarter of Northwest quarter of southwest quarter, and the north half of the southwest quarter of the northwest quarter of the southwest quarter of Section 32, T 6 S R 8 E, Less 20 feet off the east side of same for road purposes, and as such entitled to the full and undisturbed possession thereof.
It is further ordered, adjudged and decreed that Salvadore Pellichino and Sam Pellichino deliver possession of the strip of land enclosed by fence on the western edge of plaintiff's property.
It is further ordered, adjudged and decreed that all costs are to be paid by the defendants.